UNITED STATES of America, Plaintiff, Appellee,

v.

POLE NO. 3172, HOPKINTON, etc., Defendant, Appellee.

Appeal of Alice GAZDA, Ida Ambrosio and Charles Fogarty, Claimants.

No. 87–1600.

United States Court of Appeals, First Circuit.

Argued April 8, 1988.

Decided July 29, 1988.

John F. Cicilline, Providence, R.I., for claimants, appellants.

Michael P. Iannotti, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief for plaintiff, appellee U.S.

Before BOWNES, BREYER and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

In this case the defendant is a piece of real estate, while the real party in interest, Charles Fogarty, has disappeared, and his mother and aunt, who have been found by a jury to have no interest in the defendant, are prosecuting Fogarty's case in his absence. On May 30, 1986, the government filed a complaint against the named property, seeking to forfeit the same on the basis that it was purchased with the proceeds of drug trafficking. 21 U.S.C. § 881(a)(6). The record owner of the property is Fogarty, but the other two claimants, Ida Ambrosio and Alice Gazda, argued that they provided the money for its purchase pursuant to a family joint venture. Fogarty, through a power of attorney he gave his mother (Gazda), appeals from an order of the district court granting the government's motion for summary judgment against him. Gazda and Ambrosio, on their own behalf, appeal after a jury found that they did not have an ownership interest in the property.

The issues raised on appeal are several. All three appellants argue that the government's complaint was inadequate as a matter of law, for lack of particularity. Fogarty challenges the dismissal of his claim both as a result of the application of the fugitive from justice doctrine to this case, see *Molinaro v. New Jersey*, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970), and as a Rule 37(d) sanction for failure to comply with a deposition subpoena. Finally, Gazda and Ambrosio assert that the district court improperly limited the issues presented to the jury.[1] After careful consideration of these issues we reverse and remand the claims for further proceedings.

## I. *The Adequacy of the Complaint*

The threshold issue concerns the adequacy of the complaint in terms of particularity. Forfeiture complaints are governed by the Supplemental Rules for Certain Admiralty and Maritime Claims. *See* 21 U.S.C. § 881(b). Supplemental Rule E(2)(a) requires that "the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." As the Eleventh Circuit has stated, "a section 881(a) forfeiture complaint must allege sufficient facts to provide a reasonable belief that the property is subject to forfeiture." *United States v. $38,000 in United States Currency*, 816 F.2d 1538, 1548 (11th Cir. 1987). *See also United States v. $39,000 in Canadian Currency*, 801 F.2d 1210, 1219 (10th Cir.1986) ("specific facts sufficient to support an inference that the property is subject to forfeiture ...").

The peculiar stringency of the particularity requirement in these cases is based on a concern for due process which arises by reason of the "drastic nature" of these remedies. *See $39,000 in Canadian Currency*, at 1217–18, and cases cited therein. The requirement is not merely a procedural technicality, but a way of ensuring that the government does not seize and hold, for a substantial period of time, property to which, in reality, it has no legitimate claim. The failure to meet the standard set forth above requires dismissal of the complaint, albeit without prejudice. *See $38,000*, 816 F.2d at 1549; *$39,000*, 801 F.2d at 1222.

There is no question that the complaint in this case fails to meet the standard. The government merely described the property, and, parroting the language of the statute, stated that it was forfeitable

---

1. This last issue is meritless. The government conceded every relevant point concerning Gazda and Ambrosio's claims, except for the existence of their ownership interest. The jury therefore was correctly instructed to decide only this one issue.

as proceeds of a drug transaction.[2] The government, in effect, provided no facts whatsoever to support its claim.

The government argues, however, that dismissal is inappropriate under the facts of this case. The government seized the property pursuant to a seizure warrant issued by a magistrate. The magistrate found probable cause to seize the property on the basis of an affidavit, signed by Special Agent McCarthy and filed by the federal agents. The government argues that (a) due process concerns are allayed by the magistrate's determination of probable cause, and (b) the affidavit should be deemed incorporated by reference into the complaint, to supply the requisite particularity, because the claimants were on notice that it existed. We reject both arguments.

As to the due process problems, the affidavit upon which the probable cause determination was based does little to set us at ease.[3] If anything, it provides a striking illustration of the need to strictly enforce the requirements of Rule E(6). The affidavit was described by the district court here in less than complimentary terms: "even a cursory examination ... reveals it to be riddled with hearsay on virtually all its constitutive assertions." The fact that parts of the affidavit consist of third-hand allegations that Fogarty was arrested in connection with an unsuccessful drug run in 1978, although charges against him were subsequently dropped, makes the affidavit even less reassuring. While a probable cause determination may be based on otherwise inadmissible evidence, the evidence must still be found reliable. *United States v. $250,000 in United States Currency,* 808 F.2d 895, 899 (1st Cir.1987). In this case, the district court made no such determination. In addition, the probable cause determination of the magistrate and that in the complaint address two different questions: the first, whether the government

has probable cause to hold the property until it can file a complaint against it, includes considerations of the need to protect the government's interest, and comes at an earlier stage in the proceedings; the second, whether the facts in the government's possession support an inference that the property is subject to forfeiture, must be more narrowly tailored to precisely identify the portion of the property the government can keep. We cannot say, therefore, that this affidavit alone provides all the due process to which Fogarty is entitled.

The second argument also meets insurmountable obstacles. Even taking its allegations at face value, the affidavit itself falls far short of supplying facts sufficient to support a belief that the *entire* property is forfeitable. The very earliest indication of Fogarty's involvement with drugs is his arrest, described above, for an operation which, since it was unsuccessful, could not have generated any revenue. Furthermore, it took place two years *after* the purchase of the property. The property was purchased with a downpayment constituting 20.8% of its value. Since that 20.8% interest was acquired two years before the earliest indication of drug activity there is absolutely no reason to believe it is forfeitable.

The government, however, tells us the property is forfeitable in any event because Fogarty has continued making mortgage payments over periods of time for which there are indications of drug dealing. We agree that the interest acquired as a result of mortgage payments made with the proceeds of drug transactions should be forfeitable. We do not believe, however, that forfeitability spreads like a disease from one infected mortgage payment to the entire interest in the property acquired prior to the payment. After all, only the actual proceeds of drug transactions are forfeita-

---

**2.** The operative paragraphs of the complaint, in their totality, stated:

> 6. That the defendant real property with buildings, appurtenances, and improvements is a proceed traceable to exchanges of controlled substances as within the meaning of 21 U.S.C. 881(a)(6).

> 7. That by reason of the foregoing, the defendant real property, with buildings, appurtenances, and improvements is forfeited to the United States pursuant to the provisions of 21 U.S.C. 881(a)(6).

**3.** The Affidavit is reproduced as an appendix to this opinion.

ble. Unless section 881(a)(6) deprives persons accused of dealing drugs of the right to own any property, the existence of an undivided interest in a felon's property which constitutes proceeds cannot mean that his entire property is proceeds.

It appears, therefore, that the government may have an interest equal only to the portion of the property acquired by Fogarty as a result of mortgage payments (if, of course, the government can demonstrate probable cause to believe those payments were made with proceeds of drug transactions). In consequence, at the pleadings stage, the government must allege facts from which one could infer that the payments claimed to be proceeds actually were tainted; the fact finder can then later determine the percentage interest acquired as a result of tainted payments.[4]

The McCarthy affidavit fails to allege the requisite facts. We find it completely devoid of any allegations of lucrative drug dealing until July 14, 1981. On that date an anonymous "reliable informant" stated that Fogarty "travelled from Rhode Island to Miami, Florida on a weekly basis to purchase not less than a kilogram of cocaine." Only sheer speculation could provide an earlier starting date for this activity. Further information from anonymous tipsters, however, indicates Fogarty may have been profiting from the sale of cocaine on February 17, 1982, and September 19, 1983.[5] These three allegations of ongoing cocaine dealing, coupled with the lack of legitimate income, may well support a reasonable belief that the government could demonstrate probable cause for mortgage payments made between July 14, 1981, and September 19, 1983 or even thereafter, given the profits to be had from such extensive dealing.

It also appears, however, from documents in the record, that Alice Gazda took over responsibility for the mortgage payments in 1986. *Appendix* 8, at 30. The government has not argued that her income is the result of drug transactions, so, unless it has more facts that it does not disclose in the affidavit, any interest acquired during and after 1986 is also not forfeitable.

Even taking the affidavit as fully incorporated into the complaint, therefore, it appears that the government only has a facially valid claim to a proportion of the property equal to the percentage of principal paid on the mortgage from July 14, 1981 to 1986, when Gazda began making the payments.[6]

To recapitulate: the complaint itself is patently inadequate, but the government argues that we should consider the affidavit as part of the complaint, because the claimants knew or should have known its contents; and it argues that incorporating the contents of the affidavit into the complaint would bring the complaint into compliance with Rule E(2). We find, however, that this particular affidavit is inadequate to meet Rule E(2) requirements as to the whole property. In addition, we reject a rule that would require district courts generally to look at the knowledge of the claimants in determining the sufficiency of a forfeiture complaint. It is hardly a heavy burden to impose on the government the requirement that it express in the complaint the facts which it has already disclosed to the claimants. Nor can the government claim to be surprised by this requirement: Rule E(2) leaves little room to doubt that a higher than normal standard of particularity is in order, and several courts have emphasized the need for

4. That information is readily available from the mortgage holders, who keep schedules of the percentage of the principal that is paid off with each remittance of the mortgagee.

5. There is also mentioned a 1984 indictment for a drug-related conspiracy. The allegations in that indictment may well provide specific facts to indicate a drug-related income for other periods of time, but the affidavit itself presents not an inkling of the time frame involved in those

allegations or the extent of Fogarty's participation in the scheme.

6. As an aside, we sincerely hope that the quality of this affidavit is not indicative of the general quality of affidavits on which seizure warrants are routinely based. Magistrates should not so lightly authorize the taking of a person's property before the factual background is even alleged, let alone proven.

particularity in the complaint itself. *See, e.g., $38,000 in United States Currency,* 816 F.2d at 1547–49; *$39,000 in Canadian Currency,* 801 F.2d at 1219; *United States v. Certain Real Estate Property Located at 4880 S.E. Dixie Highway,* 612 F.Supp. 1492, 1498 (S.D.Fla.1985).

Furthermore, this case demonstrates that the district court must insist on knowing the factual grounds of the government's claim. Here, the United States was given full title to a parcel of land that was purchased two years before the forfeiture statute was even passed, two years before any indication of involvement with drugs, and five years before the date on which the government first shows the owner profiting from a transaction in drugs. Such a result could only have come about because the government was not forced to clearly articulate in its complaint the facts on which the seizure was premised. The district court therefore should have dismissed the complaint for lack of particularity. Nothing in this opinion, of course, precludes the government from refiling an amended complaint.

Ordinarily, our discussion would end here, since dismissal of the complaint voids all subsequent proceedings based on that complaint. However, two issues raised by Fogarty in his appeal are likely to recur on remand. These issues concern the apparent dismissal of Fogarty's claim on alternate grounds: as a Rule 37 sanction for failing to appear at a scheduled deposition; and pursuant to the fugitive from justice doctrine established in *Molinaro v. New Jersey,* 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed. 2d 586 (1970). We find that neither of these grounds justified dismissal of his complaint.

## II. *Rule 37 Sanctions*

 Federal Rule of Civil Procedure 37 provides that whatever sanctions are "just," including dismissal, may be applied against a party who fails to appear at his own deposition after being served with proper notice. The decision to sanction and the choice of the sanction lie in the discretion of the district judge. *National Hock-*

*ey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976).

Several considerations go into the choice of a sanction. These include the willfulness or bad faith of the non-complying party, *see National Hockey League,* 427 U.S. at 640, 96 S.Ct. at 2779, and the prejudice to the opposing party resulting from the failure to appear. *See Batson v. Neal Spelce Associates, Inc.,* 765 F.2d 511, 514 (5th Cir.1985). *See also Societe Internationale v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (Rule 37 does not authorize dismissal in absence of "wilfulness, bad faith, or any fault of petitioner"). These two factors appear to have been the determinative ones in the lower court's decision against Fogarty:

> Fogarty, having invoked the processes of the court to prosecute his claim to the real estate, cannot simultaneously ignore those processes to deprive his foes of customary pretrial discovery. To hold otherwise would be to allow a real party in interest unfairly to confound his litigation adversaries by wrapping himself in the protective cocoon of a power of attorney.

The government urges us to find willfulness "in that he [Fogarty] deliberately absented himself from this jurisdiction without leaving any method for one holding the power of attorney to contact him. Obviously, Fogarty was attempting to escape from his discovery obligations as well as the criminal charges." It also claims that Fogarty's failure to appear at that deposition caused "extreme prejudice" to its case.

Neither of these assertions finds any support in the record. Fogarty left the jurisdiction—leaving his mother the power of attorney—long before the government began this action. There is no indication that he is still alive, let alone that he knows anything at all about this litigation. Under these circumstances we cannot see how the court could find that he was willfully refusing to appear. The cases cited by the government are not to the contrary. In each of these cases, the attorney upon whom notice was served was in contact

with his client, or it was clear that the client himself decided, after learning of his discovery obligations, not to appear. *See United States v. $239,500 in U.S. Currency,* 764 F.2d 771 (11th Cir.1985); *United States v. One Lot of U.S. Currency totalling $506,537.00,* 628 F.Supp. 1473 (S.D.Fla. 1986). At least insofar as the failure to appear for the deposition is concerned, there is no evidence of willfulness.

We also fail to see any evidence of prejudice to the government. The allocation of the burden of proof itself in forfeiture cases goes a long way towards protecting the government. The government must initially show that it has probable cause to believe that the defendant property has been purchased with proceeds of drug transactions. Once probable cause is established, the burden passes to the claimant, who must show by a preponderance of the evidence that the property was legitimately acquired. *See United States v. $250,000 in United States Currency,* 808 F.2d 895, 897 (1st Cir.1987). The government's burden is not overly weighty: it need only demonstrate—even by otherwise inadmissible evidence, *id.* at 899—that it reasonably believes the property is forfeitable, and that its belief is supported by more than mere suspicion, although less than prima facie proof. *See, id.* at 897, and cases cited therein. The government is not even required to link the alleged proceeds to any particular drug transaction. *Id.* at 899–900.

What, then, was the government seeking to discover by deposing Fogarty? In the first place, we are not aware of any showing by the government of a need for this deposition. Furthermore, if we were to speculate, we would note that it already knew that Fogarty had claimed little or no legitimate income since 1976. Any evidence of undeclared non-drug income would only contribute to Fogarty's refutation of the government's initial case and the satisfaction of his own burden of proof. On the other hand, any information which could be supplied by Fogarty connecting him with a drug transaction the government did not yet know about is obviously protected by the Fifth Amendment privi-

lege against self-incrimination, especially in light of the indictment pending in Florida. At most, the government may have needed information about alleged legitimate earnings in order to prepare to rebut Fogarty's attempts to prove the property was not purchased with drug proceeds. In light of Fogarty's absence, however, that need does not appear too pressing.

In any event, the court could have denied Fogarty that advantage by means much less drastic than outright dismissal. It could have, for example, precluded Fogarty from using at trial any information he should have produced at that deposition, perhaps even allowing the government to prevail after a showing of probable cause.

The most drastic of sanctions must be available to the district court to serve as a deterrent for future offenders, *see National Hockey League,* 427 U.S. at 643, 96 S.Ct. at 2781; and the question "is not whether we would have imposed a more lenient penalty had *we* been sitting in the trial judge's place." *Spiller v. U.S.V. Laboratories, Inc.,* 842 F.2d 535, 537 (1st Cir.1988) (emphasis supplied). However, we still consider in reviewing the district court's exercise of its discretion "whether the district court could have fashioned an equally effective but less drastic remedy." *Griffin v. Aluminum Company of America,* 564 F.2d 1171, 1172 (5th Cir.1977). The reason for this is, as we noted in the Rule 41 context, that "unconditional dismissal with prejudice is a 'harsh' and 'severe' sanction that runs counter to our 'strong policy favoring disposition of cases on the merits.'" *Enlace Mercantil Internacional, Inc. v. Senior Industries,* 848 F.2d 315, 317 (1st Cir.1988) (footnotes omitted). While Rule 37 and Rule 41 address significantly different problems, the same considerations are at work whenever a sanction precludes disposition of a case on the merits. We conclude, therefore, that dismissal of Fogarty's claim as a sanction for failing to appear at a deposition was an abuse of discretion, under the facts of this case.

We are troubled by the government's disingenuous attempt to rid itself of even the light burden of showing probable cause

by simply noticing a party for a deposition, when it knows that party probably will not appear, and when it has little if any need for the deposition. We refuse to condone a rule that essentially allows the government to go through the missing persons list and seize all the property of everyone who fails to respond to a forfeiture complaint, without even showing the court that it reasonably believes the property is forfeitable as Congress intended it to do.

### III. *The Fugitive from Justice Doctrine*

■ The alternative basis on which the district court granted the government's motion to dismiss also cannot stand. The fugitive from justice doctrine simply cannot be extended far enough to justify the seizure of this property. One of the main considerations in the fugitive from justice cases is the fact that the fugitive is trying, either successfully or unsuccessfully, to reap the benefit of the judicial process without subjecting himself to an adverse determination. *See, e.g., United States v. Puzzanghera,* 820 F.2d 25, 27 (1st Cir. 1987); *United States v. Gordon,* 538 F.2d 914, 915 (1st Cir.1976). That concern does not arise here. Fogarty is not appealing a conviction or seeking habeas relief. On the contrary, the government seized his property and will hold it forfeit if Fogarty does not respond. As we see below, while technically he is a claimant, in reality Fogarty's claim is more in the nature of a response.

The Supreme Court recognized this possibility in *Societe Internationale v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958). There, the Court reversed the imposition of sanctions on plaintiff by the district court for failing to comply with a discovery order in a case in which it was trying to recover assets previously seized by the government. The Supreme Court said "petitioner, though cast in the role of *plaintiff,* cannot be deemed to be in the customary role of a party invoking the aid of a court to vindicate rights asserted against another. Rather petitioner's position is more analogous to that of a *defendant,* for it belatedly challenges the government's action by now protesting against a seizure and seeking the recovery of as-

sets...." *Id.* at 210 (emphasis in original). These observations apply equally well to Fogarty in this case. We thus disagree with the district court's determination that Fogarty has "invoked the processes of this court."

Neither can Fogarty avoid the "rigors of an adverse determination" by failing to appear. Again, Fogarty's situation is similar to the plaintiff's in *Societe Internationale.* The allocation of the burden of proof, and, as a result, the effect of Fogarty's non-compliance (here non-appearance) on the trial is the same. The Court in *Societe Internationale* recognized that the petitioner bore the ultimate burden of proof, and that by not producing the documents at issue, it was simply impairing its own ability to carry that burden. *Id.* at 212–13, 78 S.Ct. at 1095–96. In the same way here, if Fogarty does not appear to prove an alternate source of income once the government establishes probable cause, he stands to lose his property. Fogarty, therefore, would fully feel the rigors of an adverse determination, and can do nothing to avoid such a result without submitting to the court's jurisdiction.

Furthermore, while we have previously extended the application of the doctrine beyond an appeal in a criminal case, to a civil case, *see United States, ex rel. Bailey v. U.S.C.O. of Provost Marshal, U.S. Army,* 496 F.2d 324, 326 (1st Cir.1974), it is clear that this must be a civil case closely related to the criminal matter from which the applicant is a fugitive. *See United States v. $129,374 in United States Currency,* 769 F.2d 583, 588 (9th Cir.1985) ("clear ... that Lewis' criminal conviction and the property involved in this civil forfeiture proceeding are integrally related parts of the same unlawful drug dealing scheme"); *Schuster v. United States,* 765 F.2d 1047, 1049 (11th Cir.1985) ("no question that the civil case here at issue ... is related to the criminal case"); *United States v. $45,940 in United States Currency,* 739 F.2d 792 (2d Cir.1984) (criminal prosecution was for illegally importing the money subject to forfeiture in civil case); *Conforte v. C.I.R.,* 692 F.2d 587, 590 (9th

Cir.1982) (criminal conviction and tax court appeal "are each related components of a general tax evasion scheme."). The two proceedings here—the civil forfeiture and the Florida criminal indictment—may very well be related. At this point, however, we can only speculate as to the contents of that indictment. The fact that the property was purchased eight years before the indictment was obtained only suggests that this action cannot be based solely on the facts alleged in that indictment. Without more, we cannot conclude that Fogarty's status as a fugitive is sufficiently related to the civil forfeiture to deprive him of the right to process of any sort before his property is taken from him.

Perhaps most importantly, there is no evidence that Fogarty had notice of this proceeding, and elected not to defend it. *Compare, United States v. $129,374*, 769 F.2d at 589; *United States v. $45,940 in U.S. Currency*, 739 F.2d 792 (2d Cir.1984). The record here does not show that Fogarty is acting willfully and hiding from the court while asking it to resolve his claims. True, he has not appeared to answer the indictment in the Southern District of Florida, but there is no evidence that he is purposely avoiding the Rhode Island District court or flaunting its processes. The core concept in the fugitive from justice doctrine seems to be that the courts need not act on behalf of an individual who has attempted to bring about the same result by the "self-help" method of escaping from justice. That characterization simply does not fit Fogarty's actions. Fogarty should be treated, therefore, like any other absent civil litigant, and any misconduct or prejudice to the opposing party should be redressed subject to the strictures of the rules set up for that purpose.

As we have seen, Rule 37 does not support the drastic sanction of dismissal, and we see no other reason under the facts of this case to relieve the government of even its minimal burden of showing probable cause.

The case is *reversed* and *remanded* for proceedings consistent with this opinion. The district court may dismiss the government's complaint with leave to amend, if it feels such action is proper.

## APPENDIX

### AFFIDAVIT

I, DANIEL J. McCARTHY, being duly sworn deposes and says:

1. I am a Special Agent of the Drug Enforcement Administration, United States Department of Justice, and have been so employed for the past twenty years. I am presently assigned to the Providence Office of the Drug Enforcement Administration (DEA).

2. This affidavit is submitted in support of an application to seize property in Hopkinton, Rhode Island namely one parcel of real property with buildings, appurtenances, and improvements, known as Plat # 20, Lots 18, 18B, and 19 located at Pole # 3172, Dye Hill Road, in the Town of Hopkinton, Rhode Island owned by Charles E. Fogarty hereinafter collectively referred to as "The Property" and more fully described as follows:

That certain lot or parcel of land with any improvements thereon, situated in the northerly side of Dye Hill Road and the easterly side of Woody Hill Road, in the Town of Hopkinton, County of Washington, State of Rhode Island....

\* \* \* \* \* \*

3. Said "Property" is the proceeds of the exchange of controlled substances in violation of Title 21, United States Code, Section 841(a)(1) and is subject, therefore, to seizure and forfeiture under Title 21, United States Code, Section 881(a)(6).

4. I have reviewed the deeds for the "Property" and Special Agent Gilbert Howard has spoken to the previous owner Helen M. Dinwoodie. Howard advises me that Dinwoodie advised him that Fogarty purchased the "Property" on October 29, 1976 for $120,000. A cashier's check in the amount of $25,000 was given to her by Fogarty with the rest of the purchase price covered by mortgage. A new deed was written and filed to correct defects on November 30, 1984.

I am advised by Assistant U.S. Attorney James H. Leavey that he has reviewed a civil tax audit of Fogarty for the years 1974, 1975, 1976, and 1977. Fogarty reported an income of only $7,956.25 in 1974; $9,380.88 in 1975; $12,265.89 in 1976; and $9,974.16 in 1977. And yet, defendant was able to purchase the "Property" as noted above. Furthermore the mortgages on said "Property" have been paid from 1976 to present without any apparent legitimate occupation of Fogarty despite an intensive investigation. Fogarty holds all offices of Dutch Cove Development Corporation which was incorporated in June 1972. On May 7, 1981 Fogarty pleaded guilty to False Statement on a Tax Return on behalf of the corporation in United States District Court for the District of Rhode Island. I have checked with the Rhode Island Secretary of State and am advised that the mailing address of Dutch Cove Development Corporation is RR2, Box 248, Boston Neck Road, Narragansett, Rhode Island. I am advised by Geraldine Steinmetz of the United States Postal Inspectors office that she spoke with the postal carrier for Boston Neck Road on May 27, 1986. Said postal carrier told her that there is no such address. He did say Charles Fogarty had a box 24A, Boston Neck Road many years ago. I am also advised by New England Telephone company that it has no listing for Dutch Cove Development Corporation.

5. I am advised by Special Agent Gordon J. Rayner (Rayner) of the Savannah, Georgia DEA office that he has been advised by the Georgia Bureau of Investigation (GBI) that on October 27, 1978 at a farm in Wrens, Georgia, GBI agents arrested Fogarty and Neil P. Coady (Coady) immediately after they had flown 3,500 pounds of marijuana from Columbia to Georgia. Rayner advises me that the charges were dismissed due to a defective search warrant.

6. On or about July 14, 1981, I received information from a reliable informant, hereinafter referred to Source # 1, (all informants mentioned in this affidavit shall be referred to in the masculine gender to protect his/her identity) that Fogarty travelled from Rhode Island to Miami, Florida on a weekly basis to purchase not less than a kilogram of cocaine. Information provided by Source # 1 to DEA has led to numerous multi-kilogram seizures of cocaine and information provided by him has never been found to be false by me or other agents to my knowledge. Source # 1 stated that Fogarty conceals the cocaine in plastic packets inside cowboy boots that he wears and returns to Green Airport in Warwick, Rhode Island or to Logan Airport in Boston, Massachusetts usually on a nonstop flight. Source # 1 further said that Fogarty has several customers in the State of Rhode who purchase all the cocaine he has within twelve to twenty-four hours of Fogarty's return.

7. I was advised on February 17, 1982 by Special Agent Joseph F. Ritucci (Ritucci) that he has a confidential informant hereinafter referred to as Source # 2. Source # 2 advised Ritucci that Fogarty and Coady utilized North Central Airport in Lincoln, Rhode Island to smuggle drugs. He further stated that Fogarty recently purchased a Cessna 310 which he converted in order to fly to and from Columbia.

8. On August 10, 1984 Fogarty, along with Coady and fifteen others were indicted in the Southern District of Florida on a four count indictment. Said indictment charged Fogarty with two counts of conspiracy to import into the United States in excess of five hundred pounds of cocaine and two counts of possession with intent to distribute in excess of five hundred pounds of cocaine. Source # 1 advised me that Fogarty's role in the conspiracy was to fly the cocaine from Columbia. Fogarty is presently a fugitive on said indictment and despite an intensive search, his whereabouts are unknown.

9. On September 19, 1983 Coady sold Special Agent Richard Scovel (Scovel) of DEA four ounces of cocaine for $5,600. I was one of the surveillance agents during that transaction. Also present during the transaction was Source # 1. I am advised by Source # 1 that Fogarty as well as a now deceased North Smithfield police officer who was also a defendant in the above-mentioned Florida indictment played a pe-

ripheral role in the four ounce sale to Scovel.

10. On April 13, 1985 I conducted a surveillance of the wedding of Fogarty in Newport, Rhode Island. At said wedding I observed a vehicle registered to Michael Kelly of North Miami, Florida. This is a known alias of William McCann a co-defendant of Fogarty in the above-mentioned Florida indictment. I also observed at the said wedding vehicles registered to other major cocaine dealers from Connecticut.

11. I am advised by Special Deputy U.S. Marshal Lisa Silvestro that she has periodically been contacted by an anonymous individual hereinafter referred to as Source # 3. Source # 3 is extremely knowledgeable concerning the drug operation headed by Coady and Fogarty. Much of his information has been corroborated by other informants and surveillances. In January, 1986 Source # 3 advised Silvestro that Fogarty was then in Florida negotiating a cocaine transaction.

12. Fogarty has been under investigation with varying intensity by DEA since at least 1978. During that period of time I have been unable to discover any legitimate source of income for him. He has been listed as an officer and/or shareholder of several corporations. Only one corporation known to me has performed any legitimate work. That corporation is the Dutch Cove Development Corporation. As noted in paragraph 4 above, it has apparently been out of business for many years and Fogarty's reported income from 1974 through 1977 does not justify his purchase of the "Property".

13. Fogarty although a fugitive is presently attempting to sell the "Property" for $550,000. His aunt, Ida Ambrosia, of South Kingston, Rhode Island apparently has the power of attorney to sell the "Property". On May 1, 1986 I attempted to interview Ambrosia and upon identifying myself she slammed the door in my face. Despite having apparently no legitimate income, Fogarty has continued to made mortgage payments on the land from the time of its purchase up to the present time.

WHEREFORE, there is probable cause to believe that the "Property" as more fully described above is the proceeds of violations of Title 21, United States Code, Sections 841(a)(1) and 846 and are therefore subject to seizure and forfeiture under Title 21, United States Code, Section 841(a)(6).

(s) Daniel J. McCarthy
DANIEL J. McCARTHY
Special Agent
Drug Enforcement Administration