**R.W. INTERNATIONAL CORP. and Thomas Ward De La Cruz, Inc., Plaintiffs,**

v.

**WELCH FOODS, INC., Magna Trading Corp., et al., Defendants.**

Civ. No. 89–0511 (JP).

United States District Court, D. Puerto Rico.

Jan. 10, 1990.

**26**

Doel R. Quiñones, Hernández Mayoral & Ferrer, San Juan, P.R., for plaintiffs.

Samuel T. Céspedes, McConnell Valdés Kelley Sifre, Griggs & Ruiz–Suria, San Juan, P.R., Jorge I. Peirats, O'Neill & Borges, Hato Rey, P.R., for defendants.

## OPINION AND ORDER

PIERAS, District Judge.

Defendant Welch Foods, Inc. ("Welch") has filed several motions requesting dismissal with prejudice pursuant to Rules 37(b)(2) and 41(b) of the Federal Rules of Civil Procedure. Plaintiffs have filed oppo-

**1.** The House Commerce and Industry Committee in the Statement of Motives of Law 75 stated:

The Commonwealth of Puerto Rico cannot remain indifferent to the growing number of cases in which domestic and foreign enterprises, without just cause, eliminate their dealers, concessionaires, or agents, or without fully eliminating them, such enterprises gradually reduce and impair the extent of their previously established relationships, as soon as these have created a favorable market and without taking into account their legitimate interests.

Vol. 18, Part 4, Diario de Sesiones 1724.

**2.** The term "just cause" is defined as the "nonperformance of any essential obligations of the dealer's contract, on the part of the dealer, or any action or omission on his part that adversely and substantially affects the interests of the principal or grantor in promoting the marketing or distribution of the merchandise or service." 10 L.P.R.A. § 278(d).

**3.** The amount of such indemnity is to be fixed on the basis of the following factors:

sitions to some of defendant's requests. Let us examine the record in this case to determine whether such dismissal is warranted.

## I. FACTUAL BACKGROUND

This case was removed from the Commonwealth of Puerto Rico's Superior Court, pursuant to 28 U.S.C. § 1441, due to diversity of citizenship jurisdiction. 28 U.S.C. § 1332. Plaintiffs have averred that Welch unjustifiably terminated the distributorship agreement between them in violation of Law 75. Law 75 refers to the Puerto Rico's Dealer's Contract Act. 10 L.P.R.A. § 278, *et seq.*

The legislative purpose of Law 75 is to protect "the interest of commercial distributors working in Puerto Rico." *Gemco Latinoamerica, Inc. v. Seiko Time Corp.,* 623 F.Supp. 912, 918 (D.P.R.1985). See *Warner Lambert Co. v. Superior Court of Puerto Rico,* 101 D.P.R. 378 (1973).[1] Specifically, Law 75 forbids the unjustified termination of a dealer's contract. 10 L.P.R.A. § 278a. If no just cause[2] exists for the termination of the dealer's contract, the principal shall have executed a tortious act against the dealer and shall indemnify it to the extent of the damages caused.[3] *Id.* at § 278b.

(a) the actual value of the amount expended by the dealer in the acquisition and fitting of the premises, equipment, installations, furniture and utensils, to the extent that these are not easily and reasonably useful to any other activities in which the dealer is normally engaged;

(b) the cost of the goods, parts, pieces, accessories and utensils that the dealer may have in stock, and from whose sale or exploitation he is unable to benefit;

(c) the good will of the business, or such part thereof attributable to the distribution of the merchandise or the rendering of the pertinent services, said good will to be determined by taking into consideration the following factors:

(1) number of years the dealer has had charge of the distribution;

(2) actual volume of the distribution of the merchandise or the rendering of the pertinent services and the proportion it represents in the dealer's business;

(3) proportion of the Puerto Rican market said volume represents;

(4) any other factor that may help establish equitably the amount of said good will;

It is a well established practice before this Judge that at the Initial Scheduling Conference (ISC) the Court sets a discovery timetable, agreed to by the parties, for the orderly disposition of the case. *See* Pieras, *Judicial Economy and Efficiency Through the Initial Scheduling Conference: The Method,* 35 Cath.U.L.Rev. 943 (1986). The ISC in this case was held on October 27, 1989. During the ISC the parties informed the Court of their allegations and defenses, they stipulated to various facts, announced their witnesses, agreed to all of the documentary evidence which was submitted with their ISC memoranda, and agreed to a discovery timetable.

On November 14, 1989, pursuant to the ISC held on October 27, 1989, Welch moved for dismissal due to plaintiffs' failure to produce certain documents regarding their alleged Law 75 damages. The Court had ordered plaintiffs to produce such documents on November 13, 1989.[4] Late in the afternoon of November 13, 1989, plaintiffs minimally complied with the Court Order. According to Welch, some of the documents delivered had already been provided by plaintiffs in May of 1989.[5]

On November 16, 1989, Welch renewed its request for dismissal, this time grounded on plaintiff Thomas Ward's refusal to testify at his deposition. During Ward's deposition, his attorney of record, Doel Quiñones, Esq., stated that due to a prior commitment he had to leave.[6] Prior to his departure, Quiñones explained that plaintiff could not make objection to any of defendant's questions based on absence of his (plaintiffs') counsel. Ward's refusal to testify, as evidenced from the transcript of his deposition, commenced with Welch's counsel's line of questioning regarding R.W. International Corporation's tax exempt status. According to plaintiff, this refusal to testify was based on the fact that this line of questioning had no bearing on this case. *See* Transcript of Thomas Ward's Deposition, at pp. 5–8.

On November 16, 1989, plaintiffs filed their damage report prepared by the accounting firm Touche Ross and entitled "Special Report for T.H. Ward de la Cruz, Inc. and Affiliates" for the "Legal Case T.H. Ward de La Cruz, Inc. and Affiliates vs. Welch Foods, Inc." On December 7, 1989, Welch filed its response to plaintiffs' damage report, and again moved for dismissal based on its expert's (Price Waterhouse) inability to determine Plaintiffs' alleged damages from the report filed by plaintiffs. *See* "Motion Submitting Codefendant Welch's Response to Plaintiffs' Damage Report and in Further Support of Welch's Motion to Dismiss," filed on December 7, 1989. *See also* Letter from Price Waterhouse to Welch's counsel dated December 5, 1989 (exhibit to Welch's December 7, 1989 motion).

On December 12, 1989, Welch repeated its request for dismissal. The request for dismissal was again founded on plaintiffs' failure to produce the required documents and information relating to their alleged damage claims. Welch was forced to cancel the depositions of plaintiffs' account-

---

(d) the amount of the profit obtained in the distribution of the merchandise or in the rendering of services, as the case may be, during the last five years, or if less than five, five times the average of the annual profit obtained during the last years, whatever they may be.
10 L.P.R.A. § 278b.

**4.** The documents ordered to be produced included: purchase orders, amounts, payments; names of lines represented, volume of purchases, and sales prices; inventories (breakdown and description); sales to customers, including volume, sales prices and dates; all items of cost involved in the operations, including cost of products, rent, direct labor, overhead, equipment and income tax returns of all plaintiff corporations dealing with Welch's products.

Plaintiffs were further ordered to state the methods by which they allocate overhead and direct labor that come to be deducted from the sales of products as attributed to Welch's products, stating percentages as to allocation of overhead to other products which plaintiff sold.

**5.** The only documents produced by plaintiffs on November 13, 1989 were four tax returns for R.W. International for the years of 1984–88, one tax return form for T.H. Ward for fiscal year 1987–88, and 49 purchases orders to Welch.

**6.** Because of this absence, Mr. Ward was left with other counsel. During the ISC, plaintiffs announced that the attorney who remained with Mr. Ward has not been admitted to practice before this Court.

ants because it did not obtain full documentation of the damage claims. Such depositions had been scheduled and agreed to by the parties at the ISC held on October 27, 1989. As of this date, plaintiffs have not complied with all orders to produce documents demonstrating their alleged damages under Law No. 75.

## II. RULE 37 AND 41 SANCTIONS

It has long been the rule that federal courts possess ample authority "to manage their own affairs so as to achieve the *orderly* and *expeditious* disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962) (emphasis added). This inherent power has been enlarged under Federal Rule of Civil Procedure 41(b), which embraces the underlying principles established by *Link*. Rule 41(b) provides in pertinent part:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against the defendant....

■ Federal Rule of Civil Procedure 37 provides that whatever sanctions are "just," including dismissal, may be employed against a party who "fails to obey an order to provide or permit discovery...." *United States v. Pole No. 3172, Hopkinton*, 852 F.2d 636, 641 (1st Cir.1988). It is well settled that the decision to sanction and choice of sanction lie within the discretion of the district court. *Id. See also National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976); *Spiller v. U.S.V. Laboratories Inc.*, 842 F.2d 535, 536–37 (1st Cir.1988); *Farm Construction Services v. Fudge*, 831 F.2d 18, 20 (1st Cir.1987). Moreover, the issue presented on appellate review of the district court's discretion "is not whether [the appellate court] would have imposed a more lenient penalty had [it] been sitting in the trial judge's place, but whether the trial judge abused his discretion in imposing the penalty he did." *Spiller*, 842 F.2d at 537. The test in reviewing the district court's

exercise of discretion is whether this Court " 'could have fashioned an equally effective but less drastic remedy.' " *Pole No. 3172, Hopkinton*, 852 F.2d at 642, (*citing Griffin v. Aluminum Company of America*, 564 F.2d 1171, 1172 (5th Cir.1977)).

This Court's power under Rule 37 must include the most drastic of sanctions, such as dismissal, to serve as a deterrent against future violations of discovery orders. *United States v. Pole No. 3172, Hopkinton*, 852 F.2d at 642. Furthermore, this Court is "not necessarily required to attempt less severe sanctions before turning to the sanction of dismissal." *Farm Construction Services*, 831 F.2d at 20, (following *Damiani v. Rhode Island Hospital*, 704 F.2d 12, 15 (1st Cir.1983)).

■ The same analysis applies for sanctions imposed under Rule 41(b). *HMG Property Investors v. Parque Industrial Rio Canas*, 847 F.2d 908, 918 (1st Cir.1988). "[T]he law is well established in this circuit that where a noncompliant litigant has manifested a disregard for orders of the court and [has] been suitably forewarned of the consequences of continued intransigence, a trial judge need not first exhaust milder sanctions before resorting to dismissal." *Id.* Although Rule 37 and Rule 41 address significantly different problems, namely, the failure to prosecute and the failure to obey a discovery order, the same underlying considerations are present when a sanction precludes the disposition of a case on the merits. *United States v. Pole No. 3172, Hopkinton*, 852 F.2d at 642. These considerations include the willfulness or bad faith of the non-complying party as well as the prejudice caused to the opposing party as the result of the noncompliance. *Id.* at 641. In the instant case, Ward has been previously forewarned of the consequences of his intransigence: his failure to attend a properly noticed deposition resulted in a Rule 37(d)(1) sanction, the imposition of attorney's fees and costs.

■ Moreover, Ward's recalcitrant attitude to testify in this case at his own deposition is one example of his willfulness in violating this Court's discovery orders. The testimony related to plaintiffs' tax ex-

empt status is essential in determining the amount of alleged damages under Law 75, because the amount of plaintiffs' profit would be directly affected by tax exempt status. Even if plaintiffs' claim that the tax exempt status has no bearing on this case, such information would still be deemed "relevant" under Rule 26(b)(1). The Supreme Court has spoken on the broad construction of "relevancy" in the context of discovery:

> The key phrase in this definition—'relevant to the subject matter involved in the pending action'—has been construed broadly to encompass any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. Consistently with the notice-pleading system established by the Rules, discovery itself is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues ... Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits. (Citations omitted.)

*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389–90, 57 L.Ed.2d 253, 265 (1978). *See* Wright & Miller, *Federal Practice and Procedure: Civil* § 2008 (1988).

Even though defendant in the instant case has requested dismissal under Rule 41(b), the Court finds that resort to this rule for authority to dismiss is needless. As the Supreme Court has noted, the question of whether a court has the power to dismiss a complaint because of noncompliance with a production order depends exclusively upon Rule 37, since it is particularly addressed to the consequences of failing to comply with discovery orders. *Societe Internationale v. Rogers,* 357 U.S. 197, 207, 78 S.Ct. 1087, 1093, 2 L.Ed.2d 1255 (1958). "There is no need to resort to Rule 41(b), which appears in that part of the Rules concerned with *trials* and which lacks such specific references to dis-

covery". *Id.* Therefore, the Court imposes the sanction of dismissal under Rule 37(b)(2).

## III. RULE 11 SANCTIONS

Rule 11 of the Federal Rules of Civil Procedure provides that if an attorney files a pleading, motion, or other paper without a belief formed after reasonable inquiry that it is well grounded in fact, the Court shall impose an appropriate sanction. This sanction may include an order to pay the other party reasonable expenses incurred because of the filing of the pleading, including reasonable attorney's fees. *See Muthig v. Brant Point Nantucket, Inc.,* 838 F.2d 600, 603 (1st Cir.1988). *See also Unioil, Inc. v. E.F. Hutton & Co., Inc.,* 809 F.2d 548, 556–59 (9th Cir.1986), *cert. denied, Alioto & Alioto v. E.F. Hutton & Co.,* 484 U.S. 823, 108 S.Ct. 85, 98 L.Ed.2d 47 (1987).

■ Plaintiffs in this case have failed to make a reasonable inquiry as to the alleged amount of damages sought to be recovered before the filing of the complaint. Plaintiffs and their attorneys should have studied all the elements and facts which were the basis of this Law 75 cause of action, especially the essential element of damages suffered. In order to state the amount of $1,646,423.35 as damages suffered as a consequence of the termination of the distributorship, plaintiffs must have known the sources and figures to arrive at such an amount. Moreover, if they calculated this figure properly, they should have conducted a study of the cost and amount of Welch's line products purchased; the gross price at which they were sold; the direct and indirect cost of distribution; direct labor; overhead; cost of warehousing; delivery of products; advertisements, and all other relevant information needed to determine damages under Law 75.

Furthermore, the Court, through its Initial Scheduling Conference Call (ISC Call) entered on September 7, 1989,[7] ordered the

---

7. All ISC Calls before this Court read in pertinent part as follows:
   It is hereby ORDERED that:

2. Counsel will meet with the Court in chambers at _____ on _____, for the following purposes:

plaintiffs to document all of the elements of their cause of action.

The ISC Call in this case, as in all cases before this Court, makes reference to Pieras, *Judicial Economy and Efficiency Through the Initial Scheduling Conference: The Method,* 35 Cath.U.L.Rev. 943, 953–54 (1986), which states that:

> For example, in state law claim for damages for termination of franchise relationship, *I ordered the parties to stipulate and submit by a specified date the exact figures for commissions and annual premiums used to compute damages under a state law formula. Such an order both obviates the need for submitting this matter to formal discovery and provides the parties with an opportunity to see the amount of damages in perspective and thus consider settlement as a practical alternative.* Since this type of order is to each party's benefit, the appropriate sanctions for noncompliance are developed on ad hoc basis as attorneys report the circumstances of noncompliance to the court. (Emphasis added.)

Plaintiffs failed to submit this information at the time of the ISC.

> a) Informing the Court of their contentions;
> b) *disclosing all material and pertinent facts;*
> c) *bringing in the evidence to show such facts;*
> d) *assessing any damages claimed;*
> e) announcing all documentary evidence;
> f) announcing all witnesses, including experts;
> g) entering into stipulations of fact; and
> h) discussing settlement.
> This conference will also serve the purposes of guiding and setting discovery procedure and scheduling this case for Pre-trial and Trial.
> \*   \*   \*   \*   \*   \*
> 4. All counsel are admonished to *expedite discovery.* Interrogatories shall be limited to no more than thirty questions.
> 5. The parties are each ORDERED to file prior to the conference, or to bring with them, a memorandum *discussing their factual and legal contentions,* listing their witnesses (fact and expert) and itemizing all the discovery (including interrogatories, requests for admissions, requests for production, and depositions) which they wish to conduct. The memoranda may also include any other matter(s) deemed appropriate.
> 6. The objective of the conference scheduled herein is to simplify the issues and to reach

For all of the above stated reasons, plaintiffs are subject to the sanctions of costs and attorney's fees under Rule 11 for failing to make a reasonable inquiry as to the alleged amount of damages.

## IV. RULE 16(f) SANCTIONS

■ Federal Rule of Civil Procedure 16(f) provides as follows:

> If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference ... the judge, upon motion or the judge's own initiative may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

> agreements as to uncontroverted facts and accepted principles of law applicable to the case. Therefore, counsel attending are expected to be conversant enough with the facts and the law to enter into such agreements. Counsel should be ready to respond to such queries as the Court may deem appropriate, and be prepared to discuss settlement prospects. *See* Pieras, *Judicial Economy and Efficiency Through the Initial Scheduling Conference: The Method,* 35 Cath.U.L.Rev. 943 (1986). As required by Fed.R.Civ.P. 16(c), "[a]t least one of the attorneys for each party participating in any conference before trial shall have authority to enter into stipulations and to make admissions regarding all matters that the participants may reasonably anticipate may be discussed." Counsel are reminded that failure to participate in good faith, *or participating while being substantially unprepared, are noncompliant acts under Fed.R.Civ.P. 16(f)* that may result in sanctions, including the payment of reasonable expenses incurred by the noncompliance or fines levied upon attorneys personally. (Emphasis added.)

As discussed above, plaintiffs were unable to disclose all material and pertinent facts of this case at the time of the ISC, and failed to be substantially prepared for the ISC, thereby violating the Court's Order contained in the ISC Call. In addition, in its ISC Order, the Court ordered plaintiffs to provide all information related to their alleged damages and plaintiffs failed to do so. Thus the imposition of costs and attorney's fees is also warranted pursuant to Rule 16(f).

## V. CONCLUSION

Upon reviewing the record in this case, the Court concludes that plaintiffs have demonstrated a reprehensible pattern of violating the Rules of Civil Procedure and the discovery orders of this Court. This behavior began before the filing of the complaint, with plaintiffs' failure to conduct a reasonable inquiry as to the alleged amount of damages suffered under Law 75. This pattern of noncompliance demonstrates plaintiffs' willfulness in disregarding this Court's discovery orders. *See National Hockey League*, 427 U.S. at 640, 96 S.Ct. at 2279. Accordingly, the Court sanctions the plaintiffs under Federal Rule of Civil Procedure 37(b)(2).

Plaintiffs have repeatedly failed to produce required documentation and information related to their alleged Law 75 damages. Their last contention, in which they claim that they need not submit any information regarding Impex Trading Corp., a sister corporation of plaintiffs, is without merit. Plaintiffs' damage report reveals that plaintiffs and Touche Ross (the firm preparing the report) had agreed upon certain procedures related to "the financial and operational information of T.H. Ward de la Cruz, Inc. *and its affiliated companies Impex Trading Corporation* and R.W. International, Inc. (T.H. Ward and Affiliates) for the two years ended June 30, 1989." (Emphasis added.) *See* Letter from Touche Ross to José Hernández Mayoral, Esq. dated November 15, 1989. Furthermore, the Court in its ISC Order stated: "The defendants allege that Impex Trading was not a party to this lawsuit, when it is the real party in interest. Impex is the entity that paid Welch in exchange for Welch products." *See* ISC Order at p. 2.

The Court ordered plaintiffs to produce all evidence and sources thereof affecting plaintiffs' alleged damages and all facts affecting costs be disclosed by plaintiffs in order to place defendants in a position to discover and prepare for trial. *See* ISC Order at 7–8 and footnote 4, *supra*. There cannot be any doubt that Impex's operations, as a subsidiary of plaintiff corporations, was an integral part of the operations of the whole. Impex was involved in some essential aspects of the purchase and sale of Welch's products. Therefore, disclosure of facts related to this operation was essential to determine plaintiffs' cost of operation and consequently their damages. Plaintiffs' allegation to the contrary is frivolous.

If the Court were not to impose sanctions under the circumstances of this case, the Rules of Civil Procedure dealing with discovery as well as the ISC method used by this Court, would be like an empty "Parcha" shell without the juice. The ISC method and the Federal Rules of Civil Procedure would be frequently ignored and ultimately trivialized. Consequently, cases before this Court would not proceed in the efficient and judicious manner contemplated by the Federal Rules and implemented through the ISC method. *See* Rule 1 of the Federal Rules of Civil Procedure.

Plaintiffs in this case have violated various civil procedure rules, to wit: Rule 11 by failing to conduct a reasonable inquiry before the filing of the complaint as to the alleged amount of damages; Rule 16(f) by failing to obey the ISC Order, and appearing substantially unprepared for the ISC; and Rule 37(b)(2) for failing to comply with discovery orders. All of these violations have caused a stay of the proceedings because the defendants have been unable to conduct discovery.

Wherefore, in light of the foregoing, it is hereby ORDERED that this case be DISMISSED with prejudice. Pursuant to Rules 11, 16(f), and 37(b)(2) of the Federal

**32**

Rules of Civil Procedure, the Court further ORDERS the plaintiffs to pay defendants' reasonable expenses, costs and attorney's fees incurred to date since the filing of the complaint. Defendants are to file on or before January 23, 1990, their bill of costs and attorney's fees.

IT IS SO ORDERED.