UNITED STATES of America, Plaintiff,

v.

CERTAIN REAL ESTATE PROPERTY LOCATED AT 4880 S.E. DIXIE HIGHWAY, etc., Defendants.

No. 85–8353–CIV.

United States District Court,
S.D. Florida, N.D.

July 3, 1985.

J. Brian McCormick, Diana L.W. Fernandez, Sp. Attys., U.S. Dept. of Justice, Ft. Lauderdale Field Office, Ft. Lauderdale, Fla., for plaintiff.

Ronald B. Ravikoff, John J. Evans, G. Richard Strafer, Zuckerman, Spaeder, Taylor & Evans, Coral Gables, Fla., for defendant.

### ORDER

GONZALEZ, District Judge.

The issue presented in this case is whether the Attorney General's seizure of real property pursuant to 21 U.S.C. § 881(b) and the Supplemental Rules for Certain Admiralty and Maritime Claims without a prior *ex parte* judicial determination that the property is subject to forfeiture violates the due process clause of the Fifth Amendment.

This court has jurisdiction of the matter pursuant to 28 U.S.C. §§ 1345 and 1355; venue in this forum is proper under 28 U.S.C. § 1395.

### I.

Section 301(a)(6) of the Comprehensive Drug Abuse Prevention and Control Act of 1970 ("Act"), Pub.L. No. 95–633, 92 Stat. 3777 (codified as amended at 21 U.S.C. § 881(a)(6) (1978)),[1] provides for the forfeiture of moneys traceable to, intended for use, or used in the unlawful exchange of a controlled substance. Section 881(b) authorizes the seizure of property subject to forfeiture under the Act "upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims".[2] Rule C(2), which sets forth the procedures for *in rem* proceedings, provides that in statutory forfeiture actions a verfied complaint shall be filed containing "such allegations as may be required by the statute pursuant to which the action is brought." Thus Rule C(2) directs one back to Section 881(b), which requires that the United States allege and later establish probable cause for its belief that a substantial connection exists between the property to be forfeited and the exchange of a controlled substance. *See United States v. $364,960.00 in United States Currency*, 661 F.2d 319, 323 (5th Cir. Unit B 1981). Upon the filing of a proper complaint, Rule C(3) instructs the clerk of the court to "forthwith issue a warrant for the arrest of the vessel or other property that is the subject of the action...."

On Friday, 21 June 1985, attorneys from the United States Department of Justice invoked these forfeiture procedures to seize certain real property located in Port Salerno, Florida. Named in the verified complaint, Appendix A, is a hotel/motel known as the Manatee Resort ("Resort"), which is owned by Joseph Spina through his corporation, Atlantic Coast Investments, Inc. ("Atlantic"); Charlie's Locker, Inc., a boat company owned by Joseph Spina and his son, Steven; and Charlie's Riverboat, Inc. d/b/a Charlie's-in-the-Pocket, a restaurant corporation whose President and Director is Joseph Spina, but whose sole stockholder is Donna Sanders. The

---

1. Section 881(a)(6) provides:

   (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

   ....

   (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner. 21 U.S.C. § 881(a)(6).

2. *See infra* p. 1495.

boat company and the restaurant both lease space in the Resort from Atlantic, and operate independently of the Resort.

The only reason stated in the complaint for the seizure was the attorneys' belief "based upon reports and information furnished to [them] by the Federal Bureau of Investigation" that the "real property is subject to forfeiture to the United States of America" pursuant to 21 U.S.C. § 881(a)(6). The complaint fails to recite a single fact which might allow one to objectively conclude that the government had reason to believe that the Resort, the boat company or the restaurant had been purchased with the proceeds of drug transactions.

The government was not without reason to suspect that the Resort and accompanying complex was purchased with money traceable to narcotics deals. If claimants pleadings are taken as true, then Mr. Spina's Atlantic Coast Investments, Inc. was originally owned by a William Keen, who was convicted of federal drug violations. Mr. Spina served as Atlantic's accountant and eventually purchased all of the corporation's stock and assumed its debt in August 1981 as part of a compensation arrangement with Mr. Keen. After investing over one million dollars in the complex, and turning it into a thriving business, Mr. Spina successfully negotiated the sale of the Resort, the boat company and the restaurant for approximately four million dollars. The closing date was set for 3 August 1985, and was contingent upon Mr. Spina's completion of certain construction at the Resort. Fearing that Mr. Spina would sell the complex to a buyer who was unaware of the complex's ties to drug transactions and then leave the country with the proceeds, the government filed its complaint for forfeiture *in rem*.

Assuming these allegations are sufficient to justify the government's action, the Attorney General's complaint nevertheless fails to recite a single one of these facts.

Upon receipt of the complaint, notice of lis pendens and warrants of arrest *in rem* for the subject properties, the deputy clerk of the court randomly assigned the case to the undersigned Judge, rubber stamped his name, and affixed the court's seal to each warrant.

The next day—June 22nd—the United States Marshal Service seized the subject properties and ejected the owners and operators of the Resort, the boat company and the restaurant, along with the guests vacationing there. Among the guests forced to leave were persons participating in the Martin County Teachers Retreat. As the guests left the premises, government agents stopped and searched their vehicles to make certain that the visitors did not abscond with Resort property.

Despite the government's retention of a former Resort employee to manage the seized properties, by all indications business there has been severely damaged.[3] The government's action also has jeopardized the impending sale of all these properties by interrupting the aforementioned construction project. (The government has since represented that it has agreed in principle to permit the construction to resume.)

Unable to either operate their businesses or complete what would be a profitable sale, Joseph Spina, Atlantic, Charlie's Riverboat, Inc., Charlie's Locker, Inc.,[4] Steven Spina and Donna Sanders (collectively referred to herein as "claimants") filed an emergency motion for retention of the seized properties, or alternatively to appoint Joseph Spina to manage the Resort, permit its sale to go forward, and release Charlie's Riverboat, Inc. from the scope of the forfeiture (dk # 8 Jun. 25, 1985).[5] On June 26th, this court heard oral argument on claimants' motions.

## II.

Section 881(b) of Title 21 of the United States Code provides as follows:

Any property subject to forfeiture to the United States under this subchapter may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district

---

**3.** The government at oral argument repeatedly made much of the fact that the Resort was being managed by a former Resort employee. This reminded the court only of the ancient English practice of hanging the nobility with a silk rope.

**4.** On Sunday, 23 June 1985, government officials returned Charlie's Locker, Inc. to its owners. The boat company is included among the claimants because the court has not entered an order effecting the formal return of this business.

**5.** Claimants also filed an Emergency Motion for Protective Order, which the court need not consider because of the threshold unconstitutionality of the warrant procedure itself.

court of the United States having jurisdiction over the property, except that seizure without such process may be made when—

(1) the seizure is incident to an arrest under a search warrant or an inspection under an administrative inspection warrant;

(2) the property subject to seizure has been the subject of a prior judgment in favor of the United States in a criminal injunction or forfeiture proceeding under this subchapter;

(3) the Attorney General has probable cause to believe that the property is directly or indirectly dangerous to health or safety; or

(4) the Attorney General has probable cause to believe that the property has been used or is intended to be used in violation of this subchapter.

In the event of seizure pursuant to paragraph (3) or (4) of this subsection, proceedings under subsection (d) of this section shall be instituted promptly.

Section 881(b) thus enables the Attorney General to commence civil forfeiture proceedings in one of two ways. First, if the government lacks probable cause to believe that the subject property has been or is intended to be used in violation of Title 21, then it may initiate the forfeiture proceeding by filing a verfied complaint under the maritime rules, *supra* p. 1493, and effect seizure pursuant to a warrant of arrest *in rem*. An owner who believes the seizure unjustified may later contest it in court, at which time the government must establish a reasonable basis for its belief that the property was used or purchased in contravention of the federal drug laws.

Second, the Attorney General may effect a seizure without either a warrant or exigent circumstances provided he determines there is probable cause to believe that the property has been or is intended to be used in violation of the Act. *United States v. One 1978 Mercedes Benz*, 711 F.2d 1297, 1302 (5th Cir.1983); *United States v. One 1977 Lincoln Mark V Coupe*, 643 F.2d 154, 158 (3d Cir.), *cert. denied*, 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 88 (1981). Forfeiture proceedings must be instituted "promptly" thereafter.

In this case, the government seized claimants' property only after obtaining a warrant pursuant to the supplemental maritime rules. It is the procedure by which the clerk issued that warrant that troubles the court. The court views with displeasure the Attorney General's ability to seize real property based on a pro forma complaint and admiralty warrant that does not recite even basic facts which would enable a dispassionate observer to objectively conclude that the property may be subject to forfeiture. This is a defect of constitutional proportions which invalidates the seizure process *ab initio*.

### III.

The court's analysis begins with the Supreme Court's decision in *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). The Court there held unconstitutional on due process grounds a Wisconsin prejudment statute which permitted a creditor's lawyer to seize and effectively freeze a debtor's wages before the debtor was given notice of the action and an opportunity to be heard. Justice Douglas, writing for the Court, reasoned that Wisconsin's prejudgment garnishment law constituted an unlawful taking of property in violation of the due process clause of the Fourteenth Amendment.[6]

The Court employed the *Sniadach* logic to strike down Florida and Pennsylvania prejudgment replevin statutes in *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). A writ of replevin could be obtained under the Florida statute upon the creditor's bare assertion to a court clerk that he was entitled to the property, and under the Pennsylvania law upon filing an affidavit fixing the value of the property without alleging legal entitlement thereto. The Court held that both statutes violated the procedural due process requirement of the Fourteenth Amendment because they failed to provide for notice or an opportunity to be heard before the seizure. *Id.* at 80, 92 S.Ct. at 1994.

*Fuentes* made clear, however, that in limited circumstances, immediate seizure of a property interest without an opportunity for a prior hearing is constitutionally permissible.

[First], the seizure has been directly necessary to secure an important govern-

---

**6.** In his concurring opinion, Justice Harlan explained that the "property" of which the debtor was deprived was the *use* of her wages between the garnishment and culmination of the suit. 395 U.S. at 342, 89 S.Ct. at 1823.

mental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.

407 U.S. at 91, 92 S.Ct. at 2000.

■ Thus, procedural due process is not denied when postponement of the notice and hearing is necessary to protect the public from contaminated food, *North American Cold Storage Co. v. Chicago*, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908); a bank failure, *Coffin Brothers & Co. v. Bennett*, 277 U.S. 29, 48 S.Ct. 422, 72 L.Ed. 768 (1928); misbranded drugs, *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950); or to aid the collection of taxes, *Phillips v. Commissioner*, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931).

The Supreme Court's decision in *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), extends the *Fuentes* exception to the seizure and forfeiture of property involved in drug smuggling. In *Calero-Toledo*, Puerto Rican law enforcement authorities discovered marijuana on board a sailboat and seized the boat pursuant to a Commonwealth statute which permitted the Police to confiscate vessels used to transport, or to facilitate the transportation of, controlled substances. The Police seized the vessel without prior notice and without a prior adversary hearing, a combination found constitutionally defective in *Fuentes* and *Sniadach*. Despite the holdings in those cases, however, Justice Brennan held the Puerto Rican law constitutional based on the limited *Fuentes* exception enunciated above. The Court reasoned:

First, seizure under the Puerto Rican statutes serves significant governmental purposes: Seizure permits Puerto Rico to assert *in rem* jurisdiction over the property in order to conduct forfeiture proceedings, thereby fostering the public interest in preventing continued illicit use of the property and in enforcing criminal sanctions. *Second, preseizure notice and hearing might frustrate the interests served by the statutes, since the property seized—as here, a yacht—will often be of a sort that could be removed to another jurisdiction, destroyed, or concealed, if advance warning of confiscation were given.* And finally, unlike the situation in *Fuentes*, seizure is not initated by self-interested private parties; rather, Commonwealth officials determine whether seizure is appropriate under the provisions of the Puerto Rican statutes. In these circumstances, we hold that this case presents an "extraordinary" situation in which postponement of notice and hearing until after seizure did not deny due process.

416 U.S. at 679–80, 94 S.Ct. at 2089–90 (footnotes omitted) (emphasis added).

*Calero-Toledo* frames the issue before this court: whether the confiscation of real property suspected of being purchased with the proceeds of drug transactions is an "extraordinary" situation which justifies postponement of a hearing until after seizure.

To be sure, the seizure of *any* property pursuant to 21 U.S.C. § 881(b) serves a significant government purpose, for it deters drug smuggling by depriving the trafficker of the fruits of his evil: money and the property purchased therewith. Additionally, the government and not a private party seizes the property pursuant to statutory guidelines designed to minimize abusive behavior by law enforcement officials.

■ But *Fuentes*—and *Calero-Toledo* for that matter—make clear that some sort of preseizure hearing is necessary as long as there is a reasonable likelihood that the *res* is not going to disappear. Certainly, where the property is large and immovable (*e.g.*, land and the buildings thereon), and the likelihood of it being concealed or destroyed is remote, there is no overriding need for "prompt action" which would sacrifice the property owner's right to procedural due process.[7]

Of course, the objectives of section 881(b) might be frustrated were the government

---

7. The government argues that "prompt action" was necessary to prevent Mr. Spina from leaving the country with certain of the Resort's assets. The court discounts this concern for three reasons. First, Mr. Spina is not charged with violating any laws, and by all accounts he is free to leave the United States. Second, even if Mr. Spina did leave the country, his presence here may be necessary to finalize the sale of the properties on August 3rd. Third, even if Mr. Spina did leave the country, the government could still attach the subject properties and/or garnish the proceeds of business from or the sale of the real estate.

required to give the property owner prior notice of the hearing and seizure. Often times when the government seeks preliminary relief in these matters, it is based on information supplied by confidential informants or undercover agents the disclosure of whose identity would jeopardize the safety of the source and the success of the operation. Thus, just as in the case of a government application for a wiretap of a search warrant, policy and prudence may require that the government's request for a warrant for arrest *in rem* be held *ex parte.*

The *ex parte* nature of the preseizure hearing does not violate the teachings of *Fuentes* and its progeny. The language in those decisions reflect an obvious sensitivity to government law enforcement objectives. Procedural due process in this context is a fluid concept shaped by

the private interest that will be affected by the official action; ... the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *see* cases cited in *Mathews* at 424 U.S. at 332–35, 96 S.Ct. at 901–03; *Wofford v. Wainwright,* 748 F.2d 1505, 1507 (11th Cir.1984).

In this case, the government's seizure of the Resort, boat company and restaurant has had a serious impact on business and jeopardized—if not made impractical—the planned sale of the properties. No post-seizure hearing will cure the government's action given the extensive and possibly permanent damage suffered by the claimants. The government ousted the owners and occupants of the property based on the barest of allegations. And for what reason? The Resort property was not going to disappear; the marina did not threaten to sink into the sea.

Upon balancing these interests, the court finds, based on the facts in this case, that the Fifth Amendment minimally requires that no warrant for the arrest *in rem* of real property should issue unless and until a judicial officer has reviewed the complaint in an *ex parte* proceeding and has concluded that said complaint sets forth a reasonable basis for believing that the property is subject to forfeiture under section 881(b).

The hearing itself need be no more involved than that commonly held before a search warrant or wiretap is issued. The only delay the government might encounter is finding a judicial officer before whom the complaint can be presented. If the government is required to submit an application for a warrant or wiretap to a judge given the obvious danger to government agents presented by premature notice of the search of wiretap, then clearly the Attorney General should submit his complaint for forfeiture of real property to some form of judicial scrutiny considering the often devestating consequences of seizure to the landowners and the probable minimal danger to government agents.

Requiring pre-seizure judicial review of the government's complaint before the clerk issues the warrant also provides an important check on over-zealous law enforcement.

As section 881(b) is currently interpreted, the Attorney General plays two roles: he first decides whether a violation of Title 21 may have occurred; he then orchestrates the seizure of the property and the defense of the government's actions. Although such dual responsibilities are an inherent part of the government attorney's job, in other areas there exist important institutional safeguards to prevent abuses violative of constitutional rights. In criminal prosecutions, for example, the Grand Jury decides whether there is probable cause to believe the government's accusations. Under the Fourth Amendment, absent exigent circumstances, an impartial, neutral magistrate determines whether a specific search or seizure is justified.

No such mechanism exists under the section 881(b) civil forfeiture procedure. *Fuentes* and *Calero-Toledo* both evince a concern for "strict control" over the government's use of force. The Constitution requires, at a minimum, *at least* an *ex parte* preseizure hearing to ensure that the government force employed is neither unreasonable nor unconstitutional.

Public policy clearly favors prosecution of drug dealers and the forfeiture of their property. While such policy is certainly laudable, it should not be enforced based on naked allegations which, when acted upon, threaten individual liberties. Neither

Congress nor the people intended that the Bill of Rights be a fatality in the war on drugs. For that reason, *Fuentes* instructs and the Constitution demands that the Attorney General first submit to at least an *ex parte* judicial review of the documents setting forth the government's right to forfeiture before a warrant of arrest may issue.

■ There will be times when the government, lacking probable cause, still seeks to seize a movable *res* (*e.g.*, vehicle or vessel). *Calero-Toledo* teaches that in such cases it is constitutionally permissible for the government to act first and seek judicial approval later. In the context of this decision, *Calero-Toledo* does create an "exigent circumstances" exception to the hearing requirement.

It should be noted that most of the decisions interpreting section 881 have held that subsection (b)(4) allows a warrantless seizure *without exigent circumstances* provided the Attorney General has probable cause to believe the subject property was used in violation of the drug control laws. *See United States v. One 1978 Mercedes Benz*, 711 F.2d 1297, 1302 (5th Cir. 1983); *United States v. Bush*, 647 F.2d 357, 367 (3rd Cir.1981); *United States v. One Lincoln Mark V Coupe*, 643 F.2d 154, 158 (3rd Cir.), *cert. denied*, 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 88 (1981). But those decisions are inapposite because they involved movable property. The nature of the property involved was, in and of itself, however, an "exigent circumstance."

### IV.

■ Whether an Act of Congress is unconstitutional is a question which no court should address if the case can be decided on nonconstitutional or statutory grounds. *See Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 346–48, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); *Palmore v. Superior Court*, 515 F.2d 1294 (D.C.Cir.1975). In the instant case, however, no reading of the first portion of section 881(b) can avoid its due process problems. Arguably, the court could have decided this case on the narrower ground that the government's verified complaint fails to establish that claimants' property is subject to forfeiture. Such a result would not correct the constitutional defect because the clerk of the court, not a judicial officer, would still be the one reviewing the pleading.

To require judicial review, absent exigent circumstances, before a warrant will issue, will make it impossible for the government to seize real property based on bald assertions, rumor, innuendo and mere speculation.

■ Accordingly, the court holds that the Constitution forbids the Attorney General from seizing real property pursuant to 21 U.S.C. § 881(b) and the Supplemental Rules for Certain Admiralty and Maritime Claims absent exigent circumstances, without prior judicial review.

Because the government failed to follow this procedure in seizing claimants' property, the warrants previously issued herein are hereby quashed, and plaintiff's complaint is hereby dismissed for failure to properly and objectively allege a claim for which relief may be granted. The plaintiff is granted leave to amend within ten days.

### APPENDIX A

COMES NOW the United States of America, Plaintiff in the above-styled cause, by and through its undersigned United States Attorney for the Southern District of Florida, in a civil cause of forfeiture and alleges upon information and belief:

1. That this Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1345 and 1355.

2. That the Court has venue pursuant to Title 28, United States Code, Section 1395. The defendant real property is within the jurisdiction of this Court.

3. The United States seeks forfeiture of the real and personal property located at:

Certain real estate property located at 4880 S.E. Dixie Highway, 4882 S.E. Dixie Highway, 4884 S.E. Dixie Highway, 4888 S.E. Dixie Highway, and 4889 S.E. Dixie Highway, Port Salerno, Martin County, Florida, more specifically described as being Lots 13 through 27, Block 1 and Lots 19 through 36, both inclusive Block 69. According to revised plat of Blocks 9, 71 and 1 and first addition to Port Salerno, as recorded in Plat Book 8, Page 28, Palm Beach County, Florida public records; and that certain 15 foot alley lying between above lots and any and all lands lying between above lots and alley, lying easterly of the R/W of A1A and waters of the yacht basin of Manatee Bay or Manatee Pocket, and any and all lands lying between above lots on the one-hand, and waters of the canal reserve of said

Block 69, lying easterly of the right of way of State Road A1A and the waters of the yacht basin of Manatee Bay or Manatee Pocket, on the other hand, and all of mortgagor's right title and interest in Cleveland Avenue, lying easterly of State Road A1A right of way, now or hereafter acquired and including the Manatee Resort and Marina, Charlie's in the Pocket Restaurant and Charlie's Locker together with furnishings, furniture and contents.

4. The subject real property is titled in the name of Atlantic Coast Investments, Inc., and has a value of approximately $3,500,000.

5. By reason of the aforegoing and pursuant to the provisions of Title 21, United States Code, Section 881(a)(6), the subject real property is subject to forfeiture to the United States of America.

WHEREFORE, the plaintiff prays that process in due form of law, according to the procedure of this Court in cases of actions *in rem,* issue against the subject real property, that any person or persons having any interest therein be cited to appear herein and answer the Complaint, that this Court decree the condemnation and forfeiture of the real and personal property and improvements thereon to the United States, and that the plaintiff have such other and further relief as the case may require.

Respectfully submitted,

STANLEY MARCUS
UNITED STATES ATTORNEY

J. BRIAN McCORMICK
Special Attorney
U.S. Department of Justice
Ft. Lauderdale Field Office
299 E. Broward Blvd, RM 309E
Ft. Lauderdale, FL   33301
(305) 527-7392

DIANA L.W. FERNANDEZ
Special Attorney
U.S. Department of Justice
Ft. Lauderdale Field Office
299 E. Broward Blvd, RM 309E
Ft. Lauderdale, FL   33301
(305) 527-7392

## VERIFICATION

We, Diana L.W. Fernandez and J. Brian McCormick, Special Attorney, United States Department of Justice for the Southern District of Florida, declare under penalty of perjury as provided by 28 U.S.C. § 1746, the following:

That the foregoing Complaint for Forfeiture In Rem is based upon reports and information furnished to me by the Federal Bureau of Investigation and that everything contained therein is true and correct to the best of my knowledge and belief.

Executed on 6/22/85         .