UNITED STATES of America

v.

**ONE PARCEL OF REAL PROPERTY WITH BUILDINGS, APPURTENANCES AND IMPROVEMENTS KNOWN AS 6 PATRICIA DRIVE IN the TOWN OF NORTH PROVIDENCE, RHODE ISLAND.**

Civ. A. No. 88–0444 p.

United States District Court,
D. Rhode Island.

Jan. 20, 1989.

Michael P. Iannotti, Asst. U.S. Atty., Providence, R.I., for plaintiff.

John F. Cicilline, Providence, R.I., for defendant.

## OPINION AND ORDER

PETTINE, Senior District Judge.

This case is before the Court on claimants' motion to dismiss a complaint for forfeiture *in rem* brought by the government pursuant to 21 U.S.C. sec. 881(a)(6) against real property located in North Providence, Rhode Island and known as 6 Patricia Drive. The sole issue to be decided is whether the complaint states a claim with sufficient particularity to provide a reasonable belief that the property is forfeitable under the statute as traceable to a drug transaction and thus survives claimants' motion to dismiss. This Court thinks that, in light of the principles enunciated by the First Circuit Court of Appeals in *United States v. Pole No. 3172, Hopkinton*, 852 F.2d 636 (1988), it does not and orders dismissal of the government's complaint without prejudice.

## I. *The Complaint*

The complaint is in six counts and of such brevity that it can be recited in its entirety:

1. That this Court has jurisdiction of this action pursuant to 28 U.S.C. 1345 and 1355, 1356, and 1395; 21 U.S.C. 881(a)(6); and 19 U.S.C. 1608.

2. That the defendant real property with buildings, appurtenances, and improvements is more fully described as follows:

That certain tract or parcel of land with all the buildings and improvements thereon, situated in the Town of North Providence, County of Providence and State of Rhode Island, laid out and designated as Lot # 35 (thirty-five) on that plat entitled, "LEE'S FARM—SECTION "L" BELONGING TO PATRICIA LETT IN NORTH PROVIDENCE, RHODE ISLAND." which plat is recorded with the Land Evidence Records in said Town of North Providence on Plat Card 249. Being the same premises conveyed to Humberto Rua, et ux, Idacira Rua, by deed from Gashy Dowlatshahi of Gashy's Construction, Incorporated, dated October 3, 1986, and recorded in the Registry of Deeds of the Town of North Providence, in Deed Book 153, Page 178.

Said premises is also known as Assessor's Plat 22C Lot 1510 in the records of the Tax Assessor for the Town of North Providence, Rhode Island.

3. That on or about July 12, 1988, the defendant real property was seized by duly authorized agents of the Drug Enforcement Administration of the United States Department of Justice pursuant to the execution of a federal seizure warrant. (See seizure warrant and supporting affidavit attached hereto and made a part hereof.)

4. That the defendant real property with buildings, appurtenances, and improvements is now and during the pendency of this action will remain within the jurisdiction of this Court, namely, the District of Rhode Island.

5. That on or about October 30, 1986, the defendant real property was purchased with proceeds from the sale of cocaine, and other illegal narcotics and is therefore subject to seizure and forfeiture pursuant to Title 21, U.S.C. 881(a)(6). (See attached seizure warrant and supporting affidavit.)

6. That by reason of the foregoing, the defendant real property, with buildings, appurtenances, and improvements is forfeited to the United States pursuant to the provisions of 21 U.S.C. 881(a)(6).

WHEREFORE, plaintiff, the United States of America, prays that due process issue to enforce the forfeiture and to give notice to the interested parties to appear and show cause why forfeiture should not be decreed; that the defendant real property with buildings, appaurtenances, and improvements be condemned as forfeited to the United States of America and thereafter be disposed of according to law; and for such other and further relief as this court may deem just and proper.

To this complaint is attached the affidavit of Detective Henry Roy of the Providence Police Department, assigned as a Task Force Agent to the federal Drug Enforcement Administration. This is the same supporting affidavit that accompanied the seizure warrant previously filed in this case by the government and executed on or about July 12, 1988.

According to Agent Roy, Jaime Rua, whom the government alleges is the actual owner of the 6 Patricia Drive premises despite the fact that Rua's parents are listed as the title owners of the property (Seizure Affidavit para. 7), is a convicted drug dealer who has admitted to federal authorities that he has been dealing cocaine since 1983. Although Rua has said that he began by selling small quantities of the drug, "over the past couple of years" he has been selling approximately two kilos of cocaine per week to various customers, a quantity of drugs which Agent Roy estimates costs between $20,000.00 and $30,000.00 per kilo on the open market. (Seizure Affidavit para. 3.)

Agent Roy further states, based on documents subpoenaed from Comfed Mortgage Company and an involved attorney, that Humberto and Idacira Rua, the par-

ents of Jaime Rua, entered into a purchase and sale agreement for the suspect property on March 24, 1986, and subsequently, on August 6, 1986, signed a loan application to obtain the funds necessary to finance the real estate purchase, listing Jaime Rua as the borrower. On September 18, 1986, the resulting loan commitment for $65,000.00 in mortgage monies was signed by all three Ruas, and the 6 Patricia Drive property was closed on on October 3, 1986, with the Ruas themselves paying $25,000.00 toward the $90,000.00 total purchase price plus closing costs of $4,736.39. (Seizure Warrant para. 5.)

Finally, Agent Roy rounds out this attempt to portray the target property as having been purchased entirely with monies derived from drug transactions by claiming without explanation that $24,261.39 was due at closing and was provided personally by the Ruas.[1] Of these monies, $6,261.39 came from Jaime Rua himself, $15,000.00 from a bank account in the name of both senior Ruas, and the final $3,000.00 from Rua's mother. In addition, Agent Roy, referencing bank verifications of deposits, stated that several deposits, in amounts ranging from $500.00 to $3,054.23, were made between April 18, 1986 and August 8, 1986 to the senior Ruas' joint account. Finally, Agent Roy asserts that his investigations have shown that income derived from other rental properties owned by the senior Ruas is completely offset by mortgage payments on those properties and that tenants listed by the Ruas as living at these premises are not listed with the telephone company, the Registry of Motor Vehicles or utilities companies. (Seizure Affidavit paras. 5 and 6.)

## II. The Law Governing Civil Forfeiture in Rem of Proceeds Traceable to a Drug Transaction

█ Among the increasingly powerful weapons in the federal government's arsenal for waging its escalating war on drug trafficking in the United States are the

---

**1.** The Roy affidavit contradicts itself as to how much the Ruas actually paid toward the purchase price at closing, stating at first that the figure was $25,000.00 and later that it was $24,-261.39. The affidavit thus fails to account satisfactorily for $738.61 apparently provided by the Ruas toward the purchase of the 6 Patricia Drive property.

mechanisms of civil and criminal forfeiture. Civil forfeiture, which is governed by 21 U.S.C. sec. 881,[2] is a proceeding *in rem* brought against property either used to facilitate drug transactions or acquired as the proceeds of such criminal activity. Property found to fit the definition of forfeitable property, codified at 21 U.S.C. sec. 881(a)(1)–(8), is "treated as being guilty of wrongdoing" under the statute and subject to seizure as the tainted fruit of a criminal venture. *United States v. One 1976 Mercedes Benz 280S, Serial No. 11602012072193*, 618 F.2d 453, 454 (7th Cir. 1980). *See also, e.g., United States v. Premises Known As 2639 Meetinghouse Rd., Jamison, Pa.*, 633 F.Supp. 979, 987 (E.D.Pa.1986) (the defendants in a civil forfeiture action *in rem* are the properties and the government need only establish that the properties are corrupt in that they incorporate proceeds traceable to an exchange of controlled substances in violation of law). Criminal forfeiture is, in contrast, an *in personam* proceeding brought under 21 U.S.C. sec. 853[3] to sanction personally felons convicted of dealing in drugs by forcing them to disgorge their ill-gotten gains. Thus civil forfeiture seeks to brand the property as forfeitable, while criminal forfeiture subjects a convicted defendant to the personal punishment of forfeiture. *See generally United States of America v. Kingsley*, 851 F.2d 16 at 18, n. 2 (1st Cir. 1988); *United States v. $39,000 in Canadian Currency*, 801 F.2d 1210, 1218–19 (10th Cir.1986). *See also Calero–Toledo v. Pearson Yacht*, 416 U.S. 663, 680–86, 94 S.Ct. 2080, 2090–93, 40 L.Ed.2d 452 (1974) (recounting the evolution of civil forfeiture doctrine from pre–Judeo–Christian to modern times); 1984 U.S.Code Cong. & Admin. News 3182, 3264–66, 3374–3404 (legislative history of criminal forfeiture statute).[4]

Although the government filed the complaint in question here two months after the conviction of Jaime Rua, a real party in interest in this action, for the distribution of cocaine in violation of 21 U.S.C. sec. 841, it has elected to proceed *in rem* against the premises at 6 Patricia Drive allegedly owned by Rua rather than against Rua himself. It is settled law in federal courts that have had occasion to rule on the issue that such real property fits the definition of property forfeitable under 21 U.S.C. sec. 881(a)(6)[5] if shown to be "proceeds tracea-

---

**2.** Enacted as part of the Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91–513, sec. 511, 84 Stat. 1236, 1276–78 (1970), to, in part, "strengthen existing law enforcement authority in the field of drug abuse, ... through providing more effective means for law enforcement aspects of drug abuse prevention and control." H.R.Rep. No. 1444, 91st Cong., 2d Sess. 1, *reprinted in* 1970 U.S.Code Cong. & Admin.News 4566, 4566–68.

**3.** Enacted as part of the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, Title III (the Comprehensive Forfeiture Act of 1983), secs. 301–323, 98 Stat. 1976, 2040–57 (1984), "to enhance the use of forfeiture, and, in particular, the sanction of criminal forfeiture, as a law enforcement tool in combatting ... racketeering and drug trafficking." S.Rep. No. 225, 98th Cong., 2d Sess. 191, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3374.

**4.** For discussion of the constitutionality of the civil forfeiture provisions of the Comprehensive Drug Abuse Prevention and Control Act of 1970, see *Premises Known As 2639 Meetinghouse Rd.*, 633 F.Supp. at 993–94 (E.D.Pa.1986) (overviewing the constitutional history of both civil and criminal forfeiture in the United States before upholding the constitutionality of the term "proceeds traceable" in 21 U.S.C. sec. 881(a)(6) as

not unconstitutionally vague). For treatment of the constitutionality of the procedural rules applied to sec. 881 forfeiture actions, see cases collected at *United States v. $38,000.00 in United States Currency*, 816 F.2d 1538, 1540 n. 1 (11th Cir.1987). For a decision holding unconstitutional certain portions of the criminal forfeiture provisions of the Comprehensive Forfeiture Act of 1983, see *United States v. Crozier*, 777 F.2d 1376 (9th Cir.1985). *But see United States v. Draine*, 637 F.Supp. 482 (S.D.Ala.1986) (limiting *Crozier* to its facts), *aff'd on other grounds*, 811 F.2d 1419 (11th Cir.1987), *cert. denied sub nom. Draine v. United States*, ─── U.S. ───, 108 S.Ct. 94, 98 L.Ed.2d 55 (1987).

**5.** Section 881(a)(6) provides:
  **(a) Property subject**
  The following shall be subject to forfeiture to the United States and no property right shall exist in them:
  (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of

ble" to a drug transaction. *See, e.g., United States v. Premises Known as 8584 Old Brownsville Rd., Shelby County, Tenn.,* 736 F.2d 1129, 1131 (6th Cir.1984) (interpreting 21 U.S.C. sec. 881(a)(6), providing for forfeiture of "all proceeds" traceable to exchange of monies, negotiable instruments, securities or other things of value for controlled substance, as encompassing forfeiture of all types of property, both real and personal); cited with approval in *Application of Kingsley,* 614 F.Supp. 219, 222 n. 2 (D.Mass.1985) ("The Court believes that sec. 881(a)(6) allows the forfeiture of real property if it was purchased with money derived from illegal drug transactions."), *appeal dismissed* 802 F.2d 571 (1st Cir.1986), and in *Premises Known as 2639 Meetinghouse Rd.,* 633 F.Supp. at 994 (E.D.Pa.1986) (permitting action *in rem* to forfeit certain business and real property and rejecting claimant's argument that sec. 881(a)(6) is unconstitutionally vague because it is not clear what is meant by the term "proceeds traceable").

## A. *The Standard to be Applied to Civil Forfeiture Complaints*

Procedurally, civil forfeitures under 21 U.S.C. sec. 881 are governed by the Supplemental Rules for Admiralty and Maritime Claims.[6] More specifically, Supplemental Rule E(2)(a) details the requirements for forfeiture complaints,[7] mandating that:

> In actions to which this rule is applicable the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.

In the case at bar, the parties appear to be disputing the meaning to be given the particularity requirement spelled out so unequivocally in Supplemental Rule E(2)(a). On the one hand, claimants seem to imply that, in addition to alleging facts sufficient to provide a reasonable belief that the property is subject to forfeiture, the government must also cite evidence sufficiently adequate and reliable to establish probable cause to warrant the belief that the property is subject to forfeiture. (Cl. Memo. 1–3). The government, on the other hand, defends its complaint by asserting that a section 881 forfeiture pleading need only allege facts sufficient to provide a reasonable belief that the property is subject to forfeiture and need not plead additional facts sufficient to establish probable cause for actual seizure and forfeiture. (Pl. Memo. 1–2).

If there was ever any doubt as to the standard by which the adequacy of a civil forfeiture complaint is to be judged in the First Circuit, such doubt has recently been allayed by the test announced in *United States v. Pole No. 3172, Hopkinton,* 852

---

> this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
>
> This section, permitting civil forfeiture of proceeds traceable to sales or exchanges of controlled substances in violation of the Comprehensive Drug Abuse Prevention and Control Act of 1970, was added to the statute in 1978. Subsequent amendments to sec. 881(a) made by the Comprehensive Crime Control Act of 1984 expanded the types of property subject to civil forfeiture but left sec. 881(a)(6) unchanged.

6. Section 881(b) provides:

> **(b) Seizure pursuant to Supplement Rules for Certain Admiralty and Maritime Claims; issuance of warrant authorizing seizure**
> ' Any property subject to civil forfeiture to the United States under this subchapter may

be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property....

The section goes on to define four exceptions, none applicable to the case at bar, in which seizure without such process may be made.

7. Supplemental Rule C(2) contains additional requirements for forfeiture complaints in actions in rem, mandating that "... the complaint shall be verified on oath or solemn affirmation" and "... shall describe with reasonable particularity the property that is the subject of the action and state that it is within the district or will be during the pendency of the action." None of the Rule C(2) verification, particularity or jurisdictional requirements are at issue in the instant case.

F.2d 636, 638 (1988), in which the Circuit Court of Appeals adopted verbatim the Eleventh Circuit standard that "a section 881(a) forfeiture complaint must allege sufficient facts to provide a reasonable belief that the property is subject to forfeiture" (citing *United States v. $38,000.00 in United States Currency*, 816 F.2d 1538, 1548 (11th Cir.1987)). Explaining its approbation of this "higher than normal standard of particularity," the Court reasoned:

> The peculiar stringency of the particularity requirement in these cases is based on a concern for due process which arises by reason of the "drastic nature" of these remedies.... The requirement is not merely a procedural technicality, but a way of ensuring that the government does not seize and hold, for a substantial period of time, property to which, in reality, it has no legitimate claim.

*Id.*, 852 F.2d at 638. Thus the First Circuit joins not only the Eleventh but also the Tenth Circuit, together with numerous federal district courts, in holding that due process imposes upon the government in a 21 U.S.C. sec. 881 forfeiture action uniquely strict pleading requirements,[8] thereby entitling the claimant to a complaint which alleges on its face facts specific enough to support, without more, a reasonable inference that the government's claim to the property is valid under the statute. *See generally $38,000.00 in United States Currency*, 816 F.2d at 1547–49 (11th Cir. 1987); *United States v. $39,000 in Canadian Currency*, 801 F.2d 1210, 1219 (10th Cir.1986); *United States v. A Parcel of Real Property Commonly Known As: 3400–3410 W. 16th St.*, 636 F.Supp. 142, 146–47 (N.D.Ill.1986); *United States v. Certain Real Estate Property*, 612 F.Supp. 1492, 1498 (D.C.Fla.1985); *United States v. Banco Cafetero Intern.*, 608 F.Supp. 1394, 1401 (D.C.N.Y.1985), *aff'd on other grounds, United States v. Banco Cafetero*

*Panama*, 797 F.2d 1154 (2d Cir.1986). *But see United States v. 1625 Delaware Ave., Philadelphia, Pa.*, 661 F.Supp. 161, 163 (E.D.Pa.1987) (disagreeing with the stringent pleading requirements imposed by the Tenth Circuit in *$39,000 in Canadian Currency*, 801 F.2d 1210 and its remedy of dismissing the action, and adopting instead the standard that "the government must plead facts supporting the wholly conclusory allegation that the defendant property was purchased with drug proceeds"). Additionally, however, the First Circuit has further specified that, in cases involving claims to property under 21 U.S.C. sec. 881(a)(6), the government's complaint "must be more narrowly tailored to precisely identify the portion of the property the government can keep." *Pole No. 3172, Hopkinton*, 852 F.2d at 639. Thus, in the First Circuit, the government's interest in property purchased with funds traceable to a drug transaction is limited to only that portion of the property acquired with such funds, and any complaint brought by the government to initiate proceedings to seize an entire property must allege "facts sufficient to support a belief that the entire property is forfeitable." *Id.*, 852 F.2d at 639.

B. *Probable Cause and the Supplemental Rule E(2) Particularity Requirement*

Although the Rule E(2) pleading standard enunciated by the First Circuit in *Pole No. 3172, Hopkinton* is not couched in terms of probable cause, claimants' attempt to fold a probable-cause-for-complaint requirement into the Rule E(2) particularity requirement is perhaps understandable in view of what the Eleventh Circuit has termed the "procedural morass" that has been created by Congress's failure to design procedural rules specifically tailored to section 881 forfeiture actions and its adoption instead of both the custom laws, 19 U.S.C. secs. 1595–1627a,

---

**8.** Several courts have contrasted the pleading requirements of Supplemental Rule E(2) with the notice pleading requirements of Fed.R.Civ.P. 8(b) and held that Rule E(2) requires on its face that the complaint be specific enough to enable a claimant to respond and to commence an investigation of the facts alleged without further procedural maneuvering. *See, e.g., $38,000.00 in United States Currency*, 816 F.2d at 1547 n. 20; *$39,000 in Canadian Currency*, 801 F.2d at 1215–17 (10th Cir.1986).

and the Supplemental Rules for Certain Admiralty and Maritime Claims to govern such actions. Because these procedural rules are both difficult to apply to section 881 actions and are not "easily applied in concert with each other," the federal courts have generated a large body of case law in an attempt to interpet these rules, and it is likely these decisions that have supplied the claimants with the language of probable cause and prompted them to attempt to engraft a probable cause requirement onto the pleadings in this *in rem* forfeiture action. *$38,000.00 in United States Currency*, 816 F.2d at 1540.

To clarify the place of a probable cause standard in section 881 forfeiture doctrine, there are three distinct procedural stages to such a forfeiture action, warrant for seizure, complaint for forfeiture and the forfeiture proceeding itself, i.e. the proof of the complaint. In seeking a warrant for seizure, the government's purpose is to win the right to hold and thereby safeguard suspect property prior to the initiation of formal forfeiture proceedings. Having thus secured the property at issue, the actual forfeiture proceeding is then commenced by the filing of a section 881 complaint, the filing at issue in this case. The proceeding itself, of course, finally determines the forfeiture issue.

In the First Circuit, probable cause standards have been explicitly adopted both to evaluate the government's application for a warrant authorizing seizure pursuant to 21 U.S.C. sec. 881 and to define its burden of proof at the forfeiture proceeding itself. *See United States v. Pappas*, 613 F.2d 324, 326–30 (1st Cir.1980) (no Supplemental Rule C warrant may issue for seizure of property pursuant to sec. 881(b) unless upon probable cause, and warrantless seizure is justified "only when the seizure immediately follows the occasion that gives the federal agents probable cause *and* the exigencies of the surrounding circumstances make the requirement of obtaining process unreasonable or unnecessary"); *United States v. $250,000 in United States Currency*, 808 F.2d 895 (1st Cir.1987) (the burden of proof in a forfeiture action under 21 U.S.C. sec. 881(a)(6) is controlled by 19 U.S.C. sec. 1615 and under that statute the government must initially show probable cause to believe that the property was connected with illegal drug transactions); *United States v. One 1974 Porsche 911–S, Vehicle Identification No. 9114102550*, 682 F.2d 283, 285 (1st Cir.1982) (in a forfeiture action pursuant to 21 U.S.C. sec. 881(a)(4) the government has the burden of going forward but must only show probable cause that the *res* subject to forfeiture was involved in a crime). However, although the First Circuit's approach to the burden of proof in forfeiture actions is consistent with that taken in other Circuits,[9] its warrant-upon-probable-cause requirement is unique[10] and reflects the First Circuit's

---

**9.** The First Circuit, like the Fifth, Sixth, Ninth and Eleventh Circuits, adheres to the view that, under the forfeiture statute, the government must show probable cause that suspect property is connected with illegal drug transactions, defined as reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion. *See generally $250,000 in United States Currency*, 808 F.2d 895 (1st Cir.1987); *United States v. $5,644,540.00 in United States Currency*, 799 F.2d 1357 (9th Cir.1986); *United States v. Four Million, Two Hundred Fifty-Five Thous.*, 762 F.2d 895 (11th Cir.1985), *cert. denied sub nom. Four Million, Two Hundred Fifty-Five Thousand, Six Hundred and Twenty-Five Dollars and Thirty-Nine Cents ($4,255,625.39) v. United States*, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986); *United States v. Twenty-Two Thousand, Two Hundred Eighty Seven Dollars ($22,287.00), United States Currency*, 709 F.2d 442 (6th Cir.1983); *United States v. Three Hundred Sixty Four Thousand* *Nine Hundred Sixty Dollars ($364,960.00) in United States Currency*, 661 F.2d 319 (5th Cir. 1981).

**10.** In 1980, the First Circuit adopted a warrant-upon-probable-cause requirement for obtaining a warrant sought under the authority of 21 U.S.C. sec. 881. *Pappas*, 613 F.2d at 326–30. Since the *Pappas* decision was rendered, however, the Second, Third, Fourth and Fifth Circuits have all expressly rejected its holding, agreeing instead with Chief Judge Campbell's dissenting view that non-exigent warrantless seizures are permissible under section 881. *See United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1163 (2d Cir.1986); *United States v. One 1978 Mercedes Benz Four–Door Sedan, Vin: 116–036–12–004084*, 711 F.2d 1297, 1300–02 (5th Cir.1983); *United States v. Kemp*, 690 F.2d 397, 400–02 (4th Cir.1982); *United States v. One 1977 Lincoln Mark V Coupe*, 643 F.2d 154, 158 (3d

view that at least some of the procedural rules supplied by the Supplemental Rules for Certain Admiralty and Maritime Claims are constitutional when applied to section 881 forfeiture actions only if probable cause requirements are read into them. It is thus possible to see how the First Circuit's willingness to extend greater constitutional protection to section 881 claimants at the warrant stage of forfeiture actions might lead the real parties in interest in this action to question whether the Circuit intended to apply the same high standard to the initiation stage of the seizure proceeding, that is to the forfeiture complaint itself.

A careful reading of the *Pole No. 3172, Hopkinton* decision makes clear that the First Circuit has indeed adopted a constitutionally rigorous, yet distinct, standard by which to evaluate section 881 forfeiture complaints. In the *Pole No. 3172, Hopkinton* case, the property at issue had already been seized by the government pursuant to a seizure warrant issued by a magistrate. In issuing the warrant, the magistrate had made a finding of probable cause as required by the *Pappas* decision. When the *Hopkinton* claimant challenged the adequacy of the section 881 complaint subsequently filed by the government, the government responded by arguing that the magistrate's determination of probable cause at the warrant stage of the proceedings sufficed to allay the due process concerns raised by the claimant at this later stage in the process.

Rejecting the government's argument, the First Circuit explained that, because the warrant application and forfeiture complaint come at uniquely different times in the civil forfeiture process and are designed to accomplish very different ends, they are required to incorporate substantially different information to effect their respective purposes. In the words of the Circuit Court:

... the probable cause determination of the magistrate and that in the complaint address two different questions: the first, whether the government has probable cause to hold the property until it can file a complaint against it, includes considerations of the need to protect the government's interest, and comes at an earlier stage in the proceedings; the second, whether the facts in the government's possession support an inference that the property is subject to forfeiture, must be more narrowly tailored to precisely identify the portion of the property the government can keep. We cannot say, therefore, th[e] affidavit [on the basis of which the magistrate found probable cause to seize the property] alone provides all the due process to which [claimant] is entitled.

*Pole No. 3172, Hopkinton*, 852 F.2d at 639. Thus, in the First Circuit, a showing that satisfies the probable-cause-for-warrant requirement, thereby empowering the government to seize property and hold it temporarily pending a full forfeiture hearing, may be inadequate to meet the peculiarly stringent particularity requirement of a Rule E(2) forfeiture complaint, which necessitates that specific facts be alleged that support a reasonable belief that specific property is tainted and therefore forfeitable. In this sense, then, the particularity requirement of the complaint stage of the forfeiture process is more stringent than the probable cause standard applied in the First Circuit to the seizure stage, and it is in the satisfaction of the distinct requirements of these separate stages of the forfeiture process that due process is safeguarded.

In a parallel vein, there is nothing in the *Pole No. 3172, Hopkinton* decision that supports the view, suggested by the claimants' papers, that the First Circuit intended to collapse the Supplemental Rule E(2)(a) particularity requirement of the complaint

Cir.1981), *cert. denied sub nom. Whitby v. United States*, 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 88 (1981). *But see United States v. Spetz*, 721 F.2d 1457, 1469–73 (9th Cir.1983). Notwithstanding this "wave of criticism" trailing in the wake of *Pappas*, the First Circuit recently declined to comment on its continued vitality, stating in *In re Application for Warrant to Seize One 1988 Chevrolet Monte Carlo and One 1987 Chevrolet Camaro*, 861 F.2d 307 (1988), "we take no view as to its continued vitality if, as, and when appropriately reconsidered."

stage of the forfeiture proceeding into the probable cause showing that the government must make under 19 U.S.C. sec. 1595–1627a at the forfeiture hearing itself. As the Court of Appeals made clear in *$250,-000 in United States Currency*, 808 F.2d at 897, the probable cause standard governing the burden of proof at the actual forfeiture proceeding, like that of the warrant-authorizing-seizure stage, is uniquely tailored to a particular stage in the civil forfeiture process:

> ... the burden of proof in a forfeiture action is controlled by 19 U.S.C. sec. 1615. Under 19 U.S.C. sec. 1615, the government must initially show probable cause to believe that the property was connected with illegal drug transactions. Once probable cause is shown, the private claimant bears the burden of proving by a preponderance of the evidence that the property was not involved in illegal drug transactions. To show probable cause the government need only show a "reasonable ground for belief of guilt; supported by less than prima facie proof but more than mere suspicion."

Additionally, although the First Circuit did not explicitly address the issue of the relationship between the Rule E(2)(a) particularity requirement for the complaint and the section 1615 probable cause standard of the forfeiture proceeding (as it did the relationship between the Rule E(2)(a) standard and the Supplemental Rule C probable-cause-for-warrant requirement), the Eleventh Circuit, in explaining the standard subsequently borrowed by the First Circuit in *Pole No. 3172, Hopkinton*, interpreted the section 881(a) particularity requirement

to mean that the complaint must allege facts sufficient to provide a reasonable belief that the government *will be able to meet* its burden of showing probable cause at the eventual forfeiture hearing:

> We ... hold that a section 881(a) forfeiture complaint must allege sufficient facts to provide a reasonable belief that the property is subject to forfeiture: in particular, that the government has probable cause to believe that a substantial connection exists between the property to be forfeited and exchange of a controlled substance.

*$38,000.00 in United States Currency*, 816 F.2d at 1548.[11] Parallel language in the *Pole No. 3172, Hopkinton* opinion, although not similarly incorporated into the First Circuit's enunciation of the test of the adequacy of a forfeiture complaint, leaves little room for doubt that the First Circuit, like the Eleventh, interprets the particularity requirement to mean that a section 881(a) forfeiture complaint must allege facts sufficient to "support a reasonable belief that the government could demonstrate probable cause."[12] In short, the First Circuit recognizes a distinction between the requirements imposed upon the government at the pleading and proceeding stages of the civil forfeiture process, just as it recognizes a distinction between the requirements imposed at the seizure and pleading stages, which distinctions serve to secure the protections of due process in cases involving the constitutionally delicate matter of forfeiture.

In sum, the three stages of the civil forfeiture process are governed by three

---

11. Although no Circuit Courts of Appeals have explicitly discussed the relationship between Supplemental Rule E(2)(a) pleading requirements and 19 U.S.C. sec. 1615 burdens of proof, the Second Circuit has commented that "under the drug forfeiture statute, the Government may seize property upon the filing of a complaint and need not demonstrate probable cause until the forfeiture trial." *Banco Cafetero Panama*, 797 F.2d at 1162, aff'g *Banco Cafetero Intern.*, 608 F.Supp. at 1405. In addition, two district courts have directly addressed the question of how far a forfeiture complaint must go toward meeting sec. 1615 probable cause requirements, each holding that the government is not required to plead facts sufficient to establish prob-

able cause for seizure nor to plead its evidence. *See generally 1625 S. Delaware Ave., Philadelphia, Pa.*, 661 F.Supp. at 162; *A Parcel of Real Property*, 636 F.Supp. at 146.

12. After reviewing the affidavit relied on in the government's warrant application for salience to the forfeiture complaint, the First Circuit concluded that certain of the allegations made in the affidavit "may well support a reasonable belief that the government could demonstrate probable cause" that the suspect property was purchased with profits earned from drug transactions. *Pole No. 3172, Hopkinton*, 852 F.2d at 640.

different statutory or regulatory provisions which have been interpreted by the First Circuit to impose increasingly stringent requirements of allegation and proof upon the government as the forfeiture action progresses toward permanent forfeiture. Specifically, the First Circuit interprets Supplemental Rule C for Certain Admiralty and Maritime Claims as requiring a probable-cause-for-warrant requirement at the seizure stage of the process, Supplemental Rule E(2)(a) as requiring pleading with particularity at the complaint stage, and 19 U.S.C. sec. 1615 as requiring probable cause in the proof of the complaint. In keeping with these requirements, the complaint filed by the government in this section 881 forfeiture action is to be evaluated by the unequivocal and precisely tailored standard for evaluating such pleadings announced by the First Circuit in July 1988 in the *Pole No. 3172, Hopkinton* case. Thus this Court will examine the government's complaint for forfeiture *in rem*, and the prior seizure warrant and supporting affidavit incorporated into the complaint, to determine whether these documents together allege facts sufficient to support a reasonable belief that the entire property is subject to forfeiture under section 881(a)(6) as the government contends.

### III. *The Adequacy of the Complaint*

█ Under the standard enunciated in *Pole No. 3172, Hopkinton,* this Court can find the government's complaint adequate to initiate forfeiture of the entire premises only if the facts alleged in the accompanying affidavit of DEA Task Force Agent Roy support a belief that the entire property is in fact forfeitable as the proceeds of an illegal drug transaction. Without question, the Roy affidavit fails to supply facts sufficiently particular to pass the First Circuit test.

Certainly Roy's allegations, without more, might support an inference that the government has an interest in the 6 Patricia Drive premises equal to that portion of the property acquired by Jaime Rua as a result of the $6,261.39 that he personally put down on the property. The facts contained in the Roy affidavit might even support the further inference that the government has an additional interest in that portion of the property acquired as a result of the mortgage payments that Rua has been making since the purchase, payments that include additional principal amounts with the regular mortgage payments.[13] (Seizure Warrant para. 6.) However, additional facts also contained in the Roy affidavit, coupled with necessary allegations missing from this document, lead inexorably to the conclusion that even these seemingly "obvious" inferences require shoring up with more precise pleadings.

First, Agent Roy concedes that Jaime Rua is employed by the Attorney General's Office and earns approximately $18,000.00 per year from this employment. (Seizure Affidavit paras. 3 and 6.) Second, the seizure affidavit also states that Rua's father is employed by a major corporation and earns $1,603.00 per month, or approximately $19,236 per year, although his mother is not employed outside the home. (Seizure Warrant para. 6.) Third, Roy reports that an agent of the real estate company that handled the sale of the suspect property was told by Rua "that he could afford the property because he was getting assistance from his parents and he also was employed by the Attorney General's Office." (Seizure Warrant para. 6.) By way of omissions, there is nothing in the affidavit alleging who made the $15,000.00 in deposits to the senior Ruas' joint account or that the form of the deposits was characteristic of drug-related cash transfers.[14] Nor does

---

**13.** As the *Pole No. 3172, Hopkinton* Court made clear, the percentage interest acquired by the government as a result of tainted mortgage payments can easily be calculated from the schedule of payments for Rua's mortgage.

**14.** There are no federal cases that treat the inferences that can reasonably be drawn from allegations made in a section 881 forfeiture

complaint that a suspected or known drug dealer is in possession of large sums of money. In the forfeiture proceeding itself, however, federal courts that have inferred that monies, including bank deposits and funds used to purchase real property, were proceeds of drug transactions have generally justified their inferences by pointing to such facts as the monies consisting

the Roy affidavit distinguish the mortgage payments made on the property since Rua's conviction on May 18, 1988 for distributing cocaine (Seizure Warrant para. 3) from those made subsequently, payments which presumably are no longer the tainted proceeds of drug trafficking.

The net effect of these facts and gaps in the government's pleading is to leave this Court unable reasonably to infer that the entire premises at 6 Patricia Drive is subject to forfeiture under section 881(a)(6). Rather the information presented supports the reasonable belief that some, if not all, of the interest in the property was derived from the Ruas earned income or savings. The bare fact that Jaime Rua might have received a large proportion of his income from cocaine sales during the period in which the house was purchased and being paid for does not lead inexorably to the inference that the particular monies that the Ruas used to pay for the property were derived from those sales and not from the Ruas' legitimate income, which the government admits the family earned for a combined total in excess of $37,000 per year.[15]

Because the facts supplied in the government's complaint in this case are "not narrowly tailored to precisely identify the portion of the property the government can keep," as required by *Pole No. 3172, Hopkinton,* I find that this particular complaint is inadequate to meet Rule E(2) particularity requirements as to the whole property.

of unusually large sums or being negotiated as cash or being transported in paper sacks, suitcases or canvas carrying bags. *See, e.g., United States v. Four Million, Two Hundred Fifty–Five Thous.,* 762 F.2d 895, 903 (11th Cir.1985) (evidence that Colombian couriers refused receipts for cash, consisting of small and medium denomination bills delivered in suitcases and flight bags and amounting to over $242,000,000 in less than eight months, established probable cause to believe the money was connected to narcotics transactions); *United States v. $2,500 in United States Currency,* 689 F.2d 10, 16 (2d Cir.1982), *cert. denied sub nom. Aponte v. United States,* 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984) (government established probable cause to warrant belief that seized money was furnished in exchange for drugs where the quantity of cash found in suspected heroin dealer's apartment was "substantially greater than is commonly kept in residential premises by law-abiding wage earners," there was no other apparent explanation for the cash and DEA agents had recently paid suspect large sum for the purchase of heroin); *United States v. Certain Real Property Situated at Route 3, Box 247E, Mountain Home, Ar.,* 568 F.Supp. 434, 436 (W.D. Ark.1983) (inference that property purchased with $22,000.00 in cash and substantial log home built and paid for with cash constituted proceeds traceable to drug transactions permissible where real party in interest had no known source of income other than drug dealing and was evasive about the ownership and acquisition of the property, and illegal drugs were found in the house). Additionally, the cases linking money to drug trafficking generally employ a "totality of the circumstances" approach, only labeling money tainted when there is clear evidence of dealing closely associated with it. *See, e.g., United States v. $93,685.61 in United States Currency,* 730 F.2d 571, 572 (9th Cir. 1984), *cert. denied sub nom. Willis v. United States,* 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 61

(1984) (extremely large amount of money found in suspected drug dealer's home together with drug paraphernalia constituted strong evidence that money was connected to drug transactions); *United States v. $364,960.00 in United States Currency,* 661 F.2d 319, 324 (5th Cir.1981) (government had reasonable ground for belief that there was substantial connection between money seized with narcotics, narcotics paraphernalia and guns, and illegal drug trafficking). Analogizing from the methodology employed in the cases cited above, I can only conclude that money alone, without more, does not satisfy the extreme particularity requirement of Rule E(2).

15. In *Pole No. 3172, Hopkinton,* 852 F.2d at 646, the real party in interest to the property sought to be forfeited had no known legitimate source of income yet had been able to make mortgage payments on the land from the time of its purchase up to the time of the forfeiture action, a period during which his cocaine dealing activities were well documented. The absence of a legitimate source of income is repeatedly cited in section 881 forfeiture cases as justifying the inference that purchases made by a known dealer were made with tainted capital. *See, e.g., United States v. Brock,* 747 F.2d 761, 762 (D.C. Cir.1984) (forfeiture of jewelry seized in same house as narcotics, weapon, cash and drug paraphernalia warranted by evidence that claimant had no source of legitimate income for four years preceding the seizure and had derived income from heroin trafficking during those years); *Certain Real Property Situated at Route 3,* 568 F.Supp. at 436 (forfeiture warranted by evidence that claimant had been unemployed for approximately seven years preceding indictment on drug trafficking charges and had no known source of income during that time, yet had made large cash purchases during that same period).

As required by the First Circuit, this action is dismissed without prejudice for lack of particularity in the complaint. The government is, of course, free to initiate a new action if, upon further consideration, it thinks itself able to marshall the requisite facts sufficient to support a reasonable belief that the entire property is forfeitable.